# United States Court of Appeals
## For the First Circuit

No. 13-2003

UNITED STATES OF AMERICA,

Appellee,

v.

HARRY W. MAISONET-GONZÁLEZ,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]


Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Marlene Aponte, on brief for appellant.
John A. Matthews II, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

May 4, 2015

**TORRUELLA, Circuit Judge**.  Defendant-appellant Harry W. Maisonet-González ("Maisonet") pled guilty to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344.  He was sentenced to a fifty-one-month term of imprisonment, at the top of his Guidelines imprisonment range.  Maisonet now appeals, challenging the district court's calculation of loss and other aspects of the procedural and substantive reasonableness of his sentence.  After careful consideration, we affirm.

## I.  Facts

Because Maisonet pled guilty, our discussion of the facts is drawn from the change-of-plea colloquy, the Presentence Report ("PSR"), and the transcript of the sentencing hearing.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).

Between August 2005 and February 2006, Maisonet, owner of Harry Maisonet Auto Sales and Harry Entertainment Group, conspired to devise a scheme to fraudulently obtain money from Pentagon Federal Credit Union ("Pentagon") by submitting fraudulent automobile and personal loan applications in the name of third parties, some of them deceased.  Specifically, Maisonet opened accounts at Pentagon in the name of third parties and then provided these names to a co-defendant who had access to a database maintained by the Puerto Rico Department of Treasury.[1]  Maisonet's

---

[1]  Maisonet obtained the names for the deceased third parties by going through newspaper obituaries.

co-defendant provided personal information about these third parties to Maisonet, who, in turn, used this information to obtain loans on their behalf without their knowledge.  As result of this scheme, Maisonet obtained a total of $445,000 from Pentagon. Maisonet deposited this money in the Harry Maisonet Auto Sales account at Doral Bank,[2] for which he was the sole account holder.

Pentagon eventually detected the fraud and, in April 2006, filed a civil suit against Maisonet in the Puerto Rico Court of First Instance, San Juan Part, seeking reimbursement of the money he fraudulently obtained.  An additional and related state civil suit was filed involving Pentagon, Doral Bank, and Maisonet.[3] The parties eventually reached a private settlement agreement which put an end to these two state cases.  Pursuant to the terms of the settlement agreement, executed on May 1, 2008, Maisonet paid restitution to Pentagon in the amount of $327,297.32.

Almost two years later, on March 10, 2010, a federal grand jury sitting in the District of Puerto Rico returned a twenty-five count indictment against Maisonet and one co-defendant. Pertinently, Count One charged Maisonet with conspiracy and attempt

---

[2]  On February 27, 2015, Doral Bank was closed by the Office of the Commissioner of Financial Institutions of Puerto Rico, which appointed the Federal Deposit Insurance Corporation as receiver. See http://www.fdic.gov/news/news/press/2015/pr15024.html.

[3]  These civil actions were filed under Civil Nos. KDP2006-0508 and KPE2006-1851.

to defraud a financial institution in violation of 18 U.S.C. § 1344(1) and (2).

On June 3, 2011, Maisonet pled guilty to Count One of the Indictment, pursuant to a plea agreement. In the plea agreement, the parties calculated a total offense level of fourteen, broken down as follows: a base offense level of seven pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1); an eight-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the amount of loss was more than $70,000 but did not exceed $120,000; a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved between ten and forty-nine victims; and a three-level decrease pursuant to U.S.S.G. § 3E1.1(a) and (b) due to Maisonet's timely acceptance of responsibility. The parties, which did not stipulate to Maisonet's Criminal History Category, ultimately recommended a sentence of time served, six months of home detention, three years of supervised release, and two hundred hours of unpaid community service. For its part, the government agreed to request the dismissal of the remaining counts.

The PSR, which was disclosed to the parties on February 17, 2012, calculated a total offense level of twenty. The difference between the total offense level calculated in the PSR and the one calculated by the parties in their plea agreement stemmed from the U.S.S.G. § 2B1.1(b)(1) increase for the victim losses attributable to Maisonet's conduct. The PSR used Pentagon's

-4-

total loss of $445,000 and, thus, applied a fourteen-level increase, as opposed to the parties' calculation which discounted from Pentagon's total loss the amount restituted by Maisonet pursuant to the settlement agreement reached in the state court civil litigation, resulting in only an eight-level increase. The probation officer stated in the PSR that the total loss amount should be used in determining the applicable level increase under U.S.S.G. § 2B1.1(b)(1) because Maisonet waited until after Pentagon (the victim) had learned of the fraud to make any restitution. In addition, according to the PSR, Maisonet had a Criminal History Category of III, because he had two prior convictions and he committed the instant offense while on probation for one of his previous convictions.

On July 30, 2012, Maisonet filed his sentencing memorandum, which included objections to the PSR. Specifically, he objected to the victim losses attributable to his conduct and argued that his circumstances warranted a departure. Maisonet asserted that, because he restituted $327,297.32 before he was indicted or was aware he was being investigated by the government, the restitution should have been deducted from the loss calculation, leaving an outstanding loss of $117,703. The probation officer responded and reiterated his conclusion that the total loss should be used to calculate the offense level increase.

The sentencing hearing was held on July 24, 2013. There, Maisonet once again argued that the amount he previously restituted should be deducted from the loss amount calculation for sentencing purposes. He also encouraged the court to consider a non-Guidelines sentence and follow the recommendations made in the parties' plea agreement. The court rejected Maisonet's contentions. It first noted that it was not bound by the stipulation made by the government in the parties' plea agreement. The court then refused to discount any restitution previously made by Maisonet because Pentagon had detected the offense long before Maisonet began to make restitution, and because any restitution was not voluntary, but rather was made due to the settlement agreement in the civil cases. Ultimately, the court calculated a total offense level of twenty, which broke down the same way as in the PSR: a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1); a fourteen-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because the amount of loss was more than $400,000 but did not exceed $1,000,000; a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved between ten and forty-nine victims; and a three-level decrease pursuant to U.S.S.G. § 3E1.1(a) and (b) due to Maisonet's timely acceptance of responsibility. The court also determined that Maisonet had a Criminal History Category of III, that he had a series of prior arrests and two prior criminal convictions, and that Maisonet

committed the instant offense while on probation for a sentence imposed in 2004,[4] in clear disregard for the law. The total offense level of twenty and the Criminal History Category of III yielded a Guidelines sentencing range of forty-one to fifty-one months of imprisonment.

The district court also noted that it did not see any indication of repentance by Maisonet. It found that Maisonet tried to minimize his participation during his allocution even though the fraudulent scheme, which was very well-planned and articulated, was Maisonet's idea and he was the main player; Maisonet paid others to help him commit the fraud; and the checks from Pentagon were deposited into an account over which Maisonet had the sole control. The district court stated that Maisonet "throughout his life has displayed a conduct in which he has managed to get away with whatever he wants, and that his conduct reflects so," and "even his demeanor has betrayed him here in court."

After considering the plea agreement, the advisory Guidelines, the sentencing factors in 18 U.S.C. § 3553(a) -- especially Maisonet's history and characteristics, the need to promote adequate correctional treatment, deterrence, and respect for the law -- the court concluded that Maisonet's blatant disregard for the law and the seriousness of the offense warranted

---

[4] According to the district court's findings, in 2004 Maisonet was convicted and sentenced to three years probation stemming from charges related to the distribution of marijuana.

a sentence at the higher end of the Guidelines range. Accordingly, Maisonet was sentenced to an imprisonment term of fifty-one months, five years of supervised release, a forfeiture order in the amount of $89,994.22,[5] and a monetary assessment fee of $100. This appeal followed.[6]

## II. Discussion

Maisonet challenges both the procedural and substantive reasonableness of his sentence. He contests the "calculation of loss" component of his total offense level, which he claims resulted in an incorrect total offense level of twenty instead of fourteen, and thus a higher Guidelines sentencing range. Maisonet also claims that the district court abused its discretion by sentencing him at the higher end of his Guidelines based on his prior criminal record and lack of remorse. He argues that his prior criminal record was already contemplated in his Criminal

---

[5] By the time of sentencing, Pentagon certified that the amount still owed to it was $89,994.22.

[6] We note that even though Maisonet's plea agreement contained a waiver-of-appeal clause, his appeal is properly before us. Here, Maisonet waived his right to appeal to the extent he was subsequently sentenced in accordance with the terms and conditions set forth in the "Sentence Recommendation" provisions of the plea agreement. The sentence ultimately imposed was not in accordance with the terms and conditions of the "Sentence Recommendation" provisions, which recommended a sentence of time served, three years of supervised release, six months of home detention, and two hundred hours of unpaid community service. Thus, as the government correctly concedes, the waiver-of-appeal clause does not bar the instant appeal. See United States v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013) (holding that a waiver-of-appeal clause only precludes appeals falling within its scope).

History Category and, thus, considering his prior criminal record again as part of the 18 U.S.C. § 3553(a) sentencing factors constituted "double counting." He also alleges that the court's perception of a lack of remorse is not supported by the record. Finally, Maisonet posits that his sentence was "greater than necessary" and that the district court did not "acknowledg[e] the combination of factors that could justify" the imposition of a non-Guidelines sentence of time served, as recommended by the parties in the plea agreement. Each of Maisonet's claims fails, as his sentence is both procedurally and substantively reasonable.

We review "the reasonableness of a sentence 'under a deferential abuse-of-discretion standard.'" United States v. Battle, 637 F.3d 44, 50 (1st Cir. 2011) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)). First, we determine whether the district court made any procedural errors, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010) (quoting Gall, 552 U.S. at 51) (internal quotation marks omitted). "When assessing procedural reasonableness, our abuse of discretion standard is multifaceted. We review factual

-9-

findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter."  United States v. Trinidad-Acosta, 773 F.3d 298, 309 (1st Cir. 2014) (quoting United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)) (internal quotation marks omitted) (alterations omitted).

We then consider the substantive reasonableness of the sentence imposed.  Serunjogi, 767 F.3d at 142.  "When conducting this review, we take into account the totality of the circumstances, including the extent of any variance" from the Guidelines.  Trinidad-Acosta, 773 F.3d at 309 (quoting Rivera-Moreno, 613 F.3d at 8).  "Although we evaluate the reasonableness of a sentence even when it falls within the Guidelines, 'a defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden.'"  Battle, 637 F.3d at 51 (quoting United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006)).  A sentence will withstand a substantive reasonableness challenge so long as there is "a plausible sentencing rationale and a defensible result."  United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

## A.  Calculation of Loss for Sentencing Purposes

Maisonet challenges the calculation of loss component of his total offense level and its resulting Guidelines range. Specifically, he argues that the district court miscalculated the

amount of loss by disregarding U.S.S.G. § 2B1.1(b)(1) Application Note 3(E) (Credits Against Loss), which resulted in an incorrect total offense level of twenty instead of fourteen, and thus a higher Guidelines sentencing range. He asserts that, prior to his charge and arrest, he was not on notice of any criminal investigation and that Pentagon did not press criminal charges against him. Maisonet claims that, because he did not know of any criminal investigation when he restituted close to three-fourths of the amount obtained by fraud, the district court erred by failing to discount the restituted amount from the amount of loss and, instead, using the entire amount of loss for sentencing purposes. We disagree.

As discussed above, we review the district court's interpretation and application of the Sentencing Guidelines de novo, and its underlying factual findings for clear error. See United States v. Batchu, 724 F.3d 1, 7 (1st Cir. 2013).

Application Note 3(E)(i) to U.S.S.G. § 2B1.1(b)(1) provides an offset from the amount of loss for:

> [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

U.S.S.G. § 2B1.1(b)(1) cmt. n.3(E)(i) (emphasis added).

Maisonet's contention that he was not on notice of any criminal investigation and that Pentagon did not seek to have criminal charges brought against him is irrelevant because what is determinative under the Guidelines is the time of detection of the offense by either the victim or the government. See United States v. Mardirosian, 602 F.3d 1, 12 (1st Cir. 2010) ("The Sentencing Commission's commentary is to be 'read in a straightforward, commonsense manner.'" (quoting United States v. Carrasco-Mateo, 389 F.3d 239, 244 (1st Cir. 2004))). Pursuant to the clear language of the Guidelines, in order to be entitled to a deduction in the loss amount, Maisonet must have restituted the money before either Pentagon or the government detected the offense. See id. ("[C]redit for the return of property under Application Note 3(e) is only available if the property is returned before either the victim or law enforcement becomes aware of the crime."); United States v. García-Pastrana, 584 F.3d 351, 391-92 (1st Cir. 2009) (defining "'time of detection' as 'the earlier of (I) the time of the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency'" (quoting U.S.S.G. § 2B1.1 cmt. n.3(E)(i))). That clearly did not happen here. The district court correctly found that Pentagon detected the offense and filed suit in state

court in April 2006 seeking reimbursement of "the monies that had been fraudulently obtained." The court further found that "any restitution made was a result of the Settlement Agreement" reached by the parties on May 1, 2008, in the civil case. It then correctly concluded that Maisonet did not restitute any money before the offense was detected and, thus, was not entitled to any offset.

In conclusion, because Maisonet failed to begin restitution of the $445,000 loss amount before Pentagon (the victim) discovered the offense, the district court correctly found that the loss amount was more than $400,000 but did not exceed $1,000,000 and, thus, the sentence enhancement of fourteen levels was appropriate pursuant to U.S.S.G. § 2B1.1(b)(1)(H). The resulting total offense level and Guidelines range were also correct.

**B. Double Counting**

Maisonet's next procedural challenge -- that the district court engaged in impermissible double counting by taking into consideration his prior criminal history in analyzing the 18 U.S.C. § 3553(a) sentencing factors, even though this was already accounted for in his Criminal History Category -- fails as well.

Double counting concerns usually involve the use of a single factor more than once to calculate the Guidelines sentencing range. See, e.g., Unites States v. Fiume, 708 F.3d 59, 61 (1st

Cir. 2013). Here, the district court did not use the same factor twice to calculate the Guidelines sentencing range. It merely used Maisonet's prior criminal history to calculate his Criminal History Category, which in turn was factored into the Guidelines sentencing range, and then considered all the section 3553(a) sentencing factors, which included Maisonet's history and characteristics, the need to promote respect for the law, and to afford adequate deterrence. See United States v. Romero-Galíndez, ___ F.3d ___, Case No. 13-2205, 2015 WL 1501617, at *8 n.8 (1st Cir. Apr. 3, 2015) (suggesting that applying the same underlying facts via two separate Guidelines provisions to set a base offense level and then enhance a sentence is distinguishable from factoring defendant's prior criminal history into his base offense level and then considering their particular gravity as a factor in determining how stringent his sentence should be). This overlap between the Guidelines and other sentencing factors enumerated in 18 U.S.C. § 3553(a) did not constitute double counting and is neither surprising nor impermissible. See United States v. Cruzado-Laureano, 527 F.3d 231, 236 (1st Cir. 2008) ("The court's consideration of appellant's attitude toward the crime, as well as the serious nature of the offense, was appropriate under both the Guidelines and 18 U.S.C. § 3553(a) . . . ."). In fact, "Congress directed the Sentencing Commission to take into account many of the same factors in construing the guidelines that it directed

sentencing courts to consider, along with guidelines, in sentencing individual defendants." United States v. De Los Santos, 196 F. App'x 7, 8 (1st Cir. 2006) (comparing 28 U.S.C. § 994 with 18 U.S.C. § 3553(a)).

Maisonet cites United States v. Zapete-García, 447 F.3d 57 (1st Cir. 2006), in support of his contention that the district court inappropriately engaged in double counting. However, Maisonet's reliance on Zapete-García is misplaced. There, we stated that "[w]hen a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." Id. at 60 (emphasis added). Here, however, the district court did not impose a non-Guidelines sentence. The court merely considered his prior criminal history in determining to impose a sentence at the higher end of the Guidelines range. Furthermore, even when a non-Guidelines sentence is imposed, Zapete-García does not prohibit the court from relying at sentencing on a factor already included in the calculation of the Guidelines sentencing range. Instead, it only requires the district court to specifically articulate the reasons for doing so. Id. And the district court did so here.

In sum, the district court's imposing a higher sentence than the government recommended based in part on Maisonet's prior criminal history -- even though his history was also reflected in his Criminal History Category -- did not constitute double counting and, in fact, was both permissible and reasonable.

## C.  Lack of Remorse Finding

Maisonet also argues that the court committed clear error by concluding that he lacked remorse for his commission of the offense.  We will not find clear error unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed."  United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002) (alterations in the original) (citation omitted).

At the sentencing hearing, the district court made a specific finding that Maisonet did not show any repentance.  The district court supported this finding with the fact that Maisonet was the one responsible for devising and running the entire fraudulent scheme; he was the main player, who recruited and paid others to participate with him in the scheme; and he was the sole holder of the bank account where the fraud proceeds were deposited. Yet, Maisonet had tried to minimize his participation during his allocution.  The court stated that the way Maisonet behaved during his allocution was a reflection of how he has always proceeded in life.  Specifically, it stated that throughout his life, Maisonet

"has displayed a conduct in which he has managed to get away with whatever he wants, and that his conduct reflects so," and that "even his demeanor . . . betrayed him . . . in court." Based on the evidence on the record, we do not find that the district court's conclusion that Maisonet lacked remorse was erroneous, clearly or otherwise.

**D. Denial of Downward Departure and Non-Guidelines Sentence**

Maisonet next argues that the district court did not "acknowledg[e] the combination of factors that could justify" the imposition of a non-Guidelines sentence of time served. He, however, failed to develop this argument. In fact, he did not discuss, or even mention, which were the factors that allegedly justified a sentence below the Guidelines. Thus, this argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that arguments raised "in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Finally, we reject Maisonet's broader challenge that the district court should have granted a "downward departure" and imposed a non-Guidelines sentence of time served, as recommended by the parties in the plea agreement.[7]

_____

[7] We note that the district court was not bound by the parties' plea agreement, and Maisonet was fully aware of this when he decided to plead guilty. Specifically, through the provisions of the plea agreement, and at the change of plea hearing, Maisonet was warned that the plea agreement merely contained a recommended

"A district court's discretionary decision not to depart from the Guidelines is reviewed for reasonableness." Battle, 637 F.3d at 51-52 (citing United States v. Anonymous Defendant, 629 F.3d 68, 73-75 (1st Cir. 2010)). Here, the district court met the reasonableness standard. It considered Maisonet's arguments but found them unpersuasive because of Maisonet's leading role in the offense, his criminal history, his clear disregard for the law and the rights of his victims, the seriousness of his offense, and the timing of its occurrence, having been committed while on probation for a previous offense. We find no abuse of discretion.

In sum, although Maisonet and the government requested a sentence of time served, the district court, within its discretion, found that a sentence within the applicable Guidelines sentencing range was sufficient but not greater than necessary. The district court carefully considered all relevant factors and explained in detail the basis for its conclusion that Maisonet warranted a Guidelines sentence. This was a defensible result, and the court stated a plausible rationale for reaching it. See United States v. Ramos, 763 F.3d 45, 58 (1st Cir. 2014).

---

sentence and that the court was free to disregard the recommendations of the parties and impose a different sentence (higher or lower) than the one recommended in the plea agreement.

## III. <u>Conclusion</u>

The district court properly calculated the victim's loss attributable to Maisonet for sentencing purposes.  After correctly calculating the total offense level and Guidelines sentencing range, it sentenced Maisonet to a within-the-Guidelines sentence, which was both procedurally and substantively reasonable.  Thus, we affirm his sentence.

**<u>Affirmed</u>.**