# United States Court of Appeals
## For the First Circuit

No. 14-1417

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR SANTIAGO-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Stahl, Circuit Judges.

Jedrick H. Burgos-Amador, on brief for appellant.
Mainon A. Schwartz, Assistant United States Attorney, Rosa
Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-
Sosa, Assistant United States Attorney, Chief, Appellate Division,
on brief for appellee.

June 6, 2016

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Héctor Santiago-González ("Santiago") was charged in a two-count criminal indictment alleging bank robbery in violation of 18 U.S.C. § 2113 (a), (d) ("Count One"), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Two").  Following trial, the jury returned a guilty verdict against Santiago on both counts.  The district court sentenced Santiago to 120 months' imprisonment as to Count One and eighty-four months' imprisonment as to Count Two, to be served consecutively for a total of 204 months.  Santiago now appeals, claiming ineffective assistance of counsel.  He also challenges the sufficiency of the evidence to convict him as well as the reasonableness of the district court's imposed sentence as to Count One.

For the reasons that follow, we affirm the judgment below, without prejudice, however, to appellant's right to raise his claim of ineffective assistance of counsel in a post-conviction relief proceeding brought pursuant to 28 U.S.C. § 2255.

**I.**

On August 15, 2011, an armed assailant entered the Banco Popular branch in Morovis, Puerto Rico.  Upon entering the bank, the assailant covered his face with a mask and told bank teller Lilia López-Rodríguez ("López-Rodríguez"), at gunpoint, to fill a

-2-

white plastic bag with money. López-Rodríguez complied with the assailant's instructions, but she also placed two red security dye packs[1] inside the plastic bag. The bank robbery was captured by the bank's video surveillance equipment.

After the assailant left the bank, Agent Orlando Guzmán-Vélez ("Agent Guzmán"), an off-duty Puerto Rico Police Department ("PRPD") officer who was at the bank at the time of the robbery, ran after Santiago and unsuccessfully attempted to detain the assailant. At trial, Agent Guzmán testified that he observed the assailant remove his mask as he exited the bank and get in the driver's side of a dark brown Nissan Pathfinder.

On August 24, 2011, Officer Carlos González-Sotomayor ("Officer González"), an investigating agent and crime scene technician with the PRPD Bank Robbery Division, received an anonymous tip concerning a different bank robbery at CitiFinancial in Orocovis, Puerto Rico. The record is not developed as to the precise nature of the information provided by the anonymous tipster. However, Officer González testified that the tipster told him about a man known as "Bartolo," who owned a "dark burgundy

---

[1] A security dye pack is a security device utilized by some banks to identify money stolen during a bank robbery. The security dye pack explodes and emits dye and pepper gas when removed from the bank. Banco Popular utilized security dye packs that emitted a red dye.

-3-

or brown colored" Nissan Pathfinder and a "white Honda Accord." Officer González also testified that he confirmed that Santiago was known as Bartolo.

The next day, Officers González and Joel Rodríguez-Cruz ("Officer Rodríguez") went to Santiago's address to corroborate the information provided by the tipster. After remaining in the area for several hours, the officers observed Santiago arrive in a white Honda Accord. At this juncture, the officers decided to request assistance from a patrol car so that Officer Rodríguez could approach the residence under the pretext of investigating a domestic disturbance call.[2]

When he arrived at the residence, Officer Rodríguez was met by Julio Santiago-González ("Julio Santiago"), Santiago's brother, and Gladys González-Fragosa ("González-Fragosa"), Santiago's mother, who told the officer that her other son was taking a bath.

Officer Rodríguez requested that Santiago come out of the home when he was finished. When Santiago came outside, he provided Officer Rodríguez with identification and was placed under arrest for bank robbery. Officer Rodríguez advised Santiago of his rights in accordance with Miranda v. Arizona, 384 U.S. 436

---

[2]  Officer Rodríguez was accompanied by three other police officers in the patrol car, while Officer González remained behind.

-4-

(1966). After reading Santiago his rights, Officer Rodríguez asked Santiago if he had the weapon or money connected to the bank robbery. Santiago stated that he had disposed of the gun, but reported that he had money inside the house. Santiago added that the money was damaged because it was stained red.

Santiago, Julio Santiago, and González-Fragosa signed a consent form authorizing a search of the residence. Santiago then led Officer González to his bedroom and showed him where he had stored money obtained during the robbery, which exhibited red stains and exuded a strong pepper gas odor. Santiago told Officer González that he also stored money from the robbery inside the Honda Accord.[3] Further, he told Officer González that he had utilized the Nissan Pathfinder to commit the bank robbery.

González-Fragosa, the owner of the Nissan Pathfinder, signed a second consent form authorizing the search of her Nissan Pathfinder, which revealed that the passenger seat was stained red. Similarly, Santiago signed a consent form authorizing the search of the Honda Accord, yielding additional money that was stained red.

---

[3] Specifically, Santiago told Officer González that he had stashed money inside the Honda Accord and in his wallet, which was located inside the vehicle.

Subsequently, Officers Rodríguez and González transported Santiago to the police station. As they were driving, Santiago, without prompting, told the officers that he was repentant. The next day, Santiago, who was still under arrest, told Officer Rodríguez that he wanted to apologize for the bank robbery. Officer Rodríguez provided Santiago with additional <u>Miranda</u> warnings, after which he provided Santiago with a pen and a piece of paper. Santiago then wrote a note asking forgiveness for committing the Banco Popular robbery in Morovis. That same day, Agent Guzmán identified Santiago as the person who robbed the Banco Popular in Morovis on August 15, 2011, during an in-person lineup.[4]

## II.

Appellate courts are usually "ill-equipped to handle the fact-specific inquiry" required by ineffective assistance of counsel claims. <u>United States</u> v. <u>Rodríguez</u>, 675 F.3d 48, 55 (1st Cir. 2012) (quoting <u>United States</u> v. <u>Ofray-Campos</u>, 534 F.3d 1, 34 (1st Cir. 2008)). As a result, "'[w]e have held with a regularity bordering on the monotonous' that ineffective assistance of counsel claims, which require a showing of deficient attorney

---

[4] Agent Guzmán testified at trial that he identified Santiago during an in-person lineup; however, the record is largely silent as to how the lineup was conducted.

performance and prejudice to the defendant, 'must originally be presented to, and acted upon by, the trial court.'" Id. (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)). Further, "the insights of the trier, who has seen and heard the witnesses at first hand and watched the dynamics of the trial unfold, are often of great assistance." Id. at 56 (quoting United States v. Moran, 393 F.3d 1, 10 (1st Cir. 2004)). Accordingly, only in exceptional cases where there are no critical facts in dispute and the record is sufficiently developed will we entertain an ineffective assistance of counsel claim on direct appeal. Ofray-Campos, 534 F.3d at 34 (citing United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006)).

Santiago contends that his trial counsel provided ineffective assistance of counsel because she failed to seek suppression of the evidence against him. Santiago's principal contention is that there was no probable cause to arrest him, which tainted the evidence introduced against him.[5] Santiago further claims that his mother and brother lacked any authority to consent to a search of his bedroom. Alternatively, Santiago posits that

---

[5] Santiago does not dispute that he was read his rights in accordance with Miranda. Instead, he posits that the warnings did not attenuate the taint of his arrest.

Agent Guzmán's lineup identification was suppressible because the lineup was suggestive.

Here, the record is not sufficiently developed for us to assay Santiago's claims of ineffective assistance. The record is unclear as to what probable cause existed for Santiago's arrest. Moreover, the record is not sufficiently developed as to whether Santiago's mother and brother could consent to a search of Santiago's bedroom. The record is also devoid of any guidance as to why Santiago's trial counsel did not pursue suppression of the physical evidence against Santiago or Agent Guzmán's lineup identification.

This undeveloped record renders us unable to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). Accordingly, we decline Santiago's invitation to address these issues on direct appeal.

**III.**

"We review sufficiency of the evidence challenges de novo." United States v. García-Carrasquillo, 483 F.3d 124, 129-30 (1st Cir. 2007) (citing United States v. Boulerice, 325 F.3d 75, 79 (1st Cir. 2003)). In doing so, we affirm the conviction when, "after viewing all the evidence in the light most favorable

to the government and indulging all reasonable inferences in the government's favor, a rational factfinder could conclude that the prosecution proved all elements of the crime beyond a reasonable doubt." Id. Notably, we avoid credibility judgments as part of this analysis. United States v. Negrón-Sostre, 790 F.3d 295, 307 (1st Cir. 2015) (citing United States v. Agosto-Vega, 617 F.3d 541, 548 (1st Cir. 2010)).

When reviewing a sufficiency of the evidence claim, we consider all the evidence offered by the government that was admitted by the court, "even if the court erroneously admitted some of that evidence." United States v. Ramírez-Rivera, 800 F.3d 1, 16 (1st Cir. 2015) (citing Lockhart v. Nelson, 488 U.S. 33, 34, 40-41 (1988)); see also United States v. Claxton, 685 F.3d 300, 312 n.20 (3rd Cir. 2012).

Santiago challenges the sufficiency of the evidence presented against him. Specifically, he argues that "given the illegality of [his] arrest and its illegal fruits," we are preempted from considering the evidence presented at trial. Santiago also challenges Agent Guzmán's identification as not being credible.

Here, the Government presented ample evidence to support Santiago's conviction.[6] Specifically, the Government presented

---

[6] Santiago was convicted of violating 18 U.S.C. § 2113 (a), (d).

-9-

evidence that: (1) Santiago admitted to committing the robbery and showed the arresting officers where he had hidden the proceeds from the bank robbery; (2) López-Rodríguez, the Banco Popular bank teller, testified that she placed two security dye packs in the bag used to commit the bank robbery; (3) the money found in Santiago's bedroom and vehicle was stained red; (4) a search of González-Fragosa's Nissan Pathfinder showed that the passenger seat was stained red; (5) there was surveillance video that showed a masked assailant identified as Santiago utilizing a gun to commit the bank robbery and fleeing in a Nissan Pathfinder; and (6) Agent Guzmán observed Santiago flee the robbery in a dark brown Nissan Pathfinder.

Although the evidence outlined so far is sufficient to end Santiago's sufficiency claim, we note that Agent Guzmán identified Santiago during a police lineup and again in court.

---

Section 2113(a) punishes the forcible taking of money or property from a bank: "Whoever, by force and violence, or by intimidation, takes . . . from the person or presence of another . . . any property or money . . . belonging to . . . any bank." Section 2113(d) punishes whoever assaults or "puts in jeopardy the life of any person by the use of a dangerous weapon or device" during the commission of an offense defined in § 2113(a).

The jury also convicted Santiago of carrying a firearm in relation to the bank robbery pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). A conviction under 18 U.S.C. § 924(c) requires proof that the defendant used a real firearm when committing the predicate offense. See United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995).

Santiago claims that Agent Guzmán's identifications are inadmissible because the record belies that he was able to observe Santiago's face. However, we do not engage in credibility determinations when reviewing the sufficiency of the evidence. In any event, there was sufficient evidence presented against Santiago aside from Agent Guzmán's identifications.

We further note that Santiago failed to advance any argument that we should consider a suppression argument on appeal.[7] Accordingly, we conclude that Santiago waived this argument. See United States v. Houlihan, 92 F.3d 1271, 1292 (1st Cir. 1996) (noting settled appellate rule that issues not briefed and properly developed on appeal are waived); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to

---

[7] Federal Rule of Criminal Procedure 12 was amended in 2014. Prior to the amendment, Rule 12 stated that party motions not brought prior to the trial court's deadline were waived. Fed. R. Crim. P. 12(e) (effective until Dec. 1, 2014). In contrast, the new rule states: "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). However, "a court may consider the defense, objection, or request if the party shows good cause." Id. Rule 12(b)(3) motions include pre-trial motions requesting the suppression of evidence. Fed. R. Crim. P. 12(b)(3)(C). This change in wording has prompted some Circuits to conclude that plain error review is proper even in the absence of good cause, while others have opted to review unpreserved Rule 12 issues only upon a showing of good cause. See United States v. Burroughs, 810 F.3d 833, 838 (D.C. Cir. 2016) (collecting cases). Given Santiago's failure to address this issue, we need not address it here.

do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Thus, viewing the evidence in the light most favorable to the jury's verdict, we find that there was sufficient evidence presented as to both counts.

**IV.**

Lastly, Santiago challenges the reasonableness of the district court's sentence as to Count One.[8]  The district court calculated Santiago's guidelines sentencing range ("GSR") as seventy to eighty-seven months' imprisonment.[9]  However, the district court made an upward variance of thirty-three months and sentenced Santiago to a total of 120 months.  The statute of conviction provides a maximum sentence of twenty-five years.  18 U.S.C. § 2113 (a), (d).

We generally review the district court's sentencing decisions for reasonableness under an abuse of discretion standard.  United States v. Trinidad-Acosta, 773 F.3d 298, 308 (1st Cir. 2014) (citing Gall v. United States, 552 U.S. 38, 51

---

[8]  Santiago styles his claim as a substantive reasonableness challenge.  However, he seems to advance, as well as cite case law in support of, both procedural and substantive reasonableness claims.  As a result, we will consider procedural reasonableness to the extent that it has any bearing on his sentence.

[9]  Santiago's total offense level was calculated at twenty-three and he had a criminal history category ("CHC") of IV.

(2007)). "Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).

When assaying procedural reasonableness, we "'review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter.'" Trinidad-Acosta, 773 F.3d at 309 (quoting United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014)). Procedural reasonableness "includes errors such as failing to consider appropriate sentencing factors, predicating a sentence on clearly erroneous facts, or neglecting to explain the rationale for a variant sentence adequately." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)).

In contrast, substantive unreasonableness encompasses whether the sentence survives scrutiny when examined under the totality of the circumstances. Id. "The hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" United States v. Díaz-Bermúdez, 778 F.3d 309, 313 (1st Cir. 2015) (quoting Martin, 520 F.3d at 96).

-13-

According to Santiago, the district court improperly deviated from the GSR when it based the variance on his prior criminal record, which was already contemplated in his CHC. He relies on Ofray-Campos for the proposition that:

> [w]hen a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.

534 F.3d at 43 (quoting United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006)).

Santiago ignores that a sentencing judge "may consider whether a defendant's criminal history score substantially underrepresents the gravity of his past conduct" as part of the inquiry of the defendant's history and characteristics. Flores-Machicote, 706 F.3d at 21 (citing United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012); United States v. Walker, 665 F.3d 212, 233-34 (1st Cir. 2011)). As a result, a district court may vary a sentence upward in an effort to reflect past leniency. Id.

Here, the district court noted that Santiago had an extensive criminal history that encompassed a conviction for burglary and various arrests for illegal appropriation, controlled

substances, and robbery.[10]  Notably, said conviction and arrests

did not factor into the calculation of Santiago's criminal history

score.  The court also highlighted that because the majority of

these arrests resulted in dismissals, Santiago had enjoyed

significant leniency from the state courts.  The district court

was also well aware of the fact that Santiago did not qualify as

a career offender under the sentencing guidelines because of a

technicality.[11]  These factors readily support our conclusion that

---

[10]  In United States v. Cortés-Medina, we recently recognized that
our precedents expressed in dicta that a series of arrests may
"'legitimately suggest a pattern of unlawful behavior even in the
absence of any convictions.'"  No. 14-1101, 2016 WL 2755987, at
*3 (1st Cir. May 12, 2016) (citations omitted).  Despite our
previous statements, we counseled sentencing courts against
relying on this dicta moving forward.  Id.  Nonetheless, we
concluded that in the absence of a prior warning, it was not plain
error for the district court to consider the defendant's arrest
record.

Santiago failed to advance any argument that the district court
impermissibly relied on his arrest record during sentencing,
thereby waiving his argument.  As a result, we need not enter into
that discussion here.  Notwithstanding Santiago's waiver, we note
that had Santiago advanced such a claim on appeal, it would be
subject to plain error review because he failed to raise it below.
See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).
Thus, applying the reasoning employed by the panel in Cortés-
Medina, we would similarly conclude that it was not plain error
for the sentencing court to take Santiago's arrest record into
account.  We also emphasize that Santiago's sentence was not
exclusively premised on his arrest record.  The sentencing court
justified the imposed variance after the permissible consideration
of Santiago's previous convictions, as well as the fact that
Santiago did not qualify as a career offender under the sentencing
guidelines because of a technicality.

[11]  Although a sentencing court is obligated to provide plausible

the court's sentence was largely premised on an understanding that Santiago's criminal history score severely underrepresented his criminal behavior.

Santiago also contends that the district court's imposed variance is "not modest" and requires that the court provide a compelling reason to justify it.  He correctly notes that "the greater a deviation from the GSR, the more compelling the sentencing court's justification must be."  Del Valle-Rodríguez, 761 F.3d at 177 (citing United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006)).  Here, the sentencing court sufficiently indicated that Santiago's sentence was necessary because his CHC did not properly reflect his previous and numerous criminal transgressions.  In doing so, the sentencing court made clear that Santiago's situation is distinct from the norm.  See id.  As such,

---

and coherent reasoning for a variance, it is not required to be pedantic in its reasoning.  Del Valle-Rodríguez, 761 F.3d at 177. We may infer a district court's reasoning "by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did."  United States v. Rivera-Clemente, 813 F.3d 43, 50 (1st Cir. 2016), petition for cert. filed, (U.S. May 5, 2016) (No. 15-9248) (citations omitted).  At the sentencing hearing, the Government explained that Santiago had a prior controlled substance offense from 2010.  In addition to that conviction, Santiago pleaded guilty to robbing a CitiFinancial branch on July 31, 2011, which was approximately two weeks before the Banco Popular robbery.  Because Santiago pleaded guilty to robbing the CitiFinancial branch after the jury found him guilty for robbing the Banco Popular branch in this case, Santiago did not qualify as a career offender.  See U.S.S.G. § 4B1.2(c).

we are satisfied that the court sufficiently justified the imposed variance.[12]

Given the district court's preoccupation that Santiago's criminal history score did not adequately reflect his criminal past, we can reasonably infer that the court was concerned with Santiago's potential for recidivism, as well as the need to protect the public. Thus, the court could conclude that Santiago's extensive criminal antecedents and the state court's leniency resulted in Santiago's failure to respect the law and necessitated an above-guidelines sentence in order to prevent future crimes.

Furthermore, the district court did not double count Santiago's criminal history. To the extent that the district court may have taken into account any of Santiago's crimes that were already factored into his criminal history score, the court did not utilize the same factor twice to calculate his GSR. Instead, the court took into account those crimes that factored into his criminal history score to calculate his GSR and then

---

[12] We also note that in Zapete-García, the sentencing court imposed a forty-eight month sentence when the top end of the GSR was six months. 447 F.3d at 58-59. In other words, the sentencing court imposed a variance of 800 percent. Here, the district court imposed a sentence that was thirty-three months over the top end of the GSR, which is significantly more modest. This distinction is of import because, as we already noted, "the greater a deviation from the GSR, the more compelling the sentencing court's justification must be." Del Valle-Rodríguez, 761 F.3d at 177 (citing Smith, 445 F.3d at 4).

considered all the 18 U.S.C. § 3553 factors, which included his history and characteristics. See United States v. Romero-Galíndez, 782 F.3d 63, 72 n.8 (1st Cir. 2015).

Similarly, the district court did not double count the elements of the bank robbery offense. Rather, the district court noted that Santiago brandished his weapon at bank employees and customers and never "expressed remorse or empathy for the people at the bank or the tellers that he held at gunpoint." It is beyond cavil that this proclamation was not, in effect, double counting the bank robbery elements.[13]

---

[13] It is well established that district courts may take into account a defendant's lack of remorse during sentencing. See United States v. Cruzado-Laureano, 527 F.3d 231, 237 (1st Cir. 2008). Surprisingly, Santiago does not call our attention to the fact that he did write a letter asking for forgiveness and expressing regret for the Banco Popular robbery. In any event, Santiago's efforts would have been unsuccessful if he had. While it is true that Santiago did express regret for the Banco Popular robbery in his note, he later disavowed that statement and denied committing the robbery. Moreover, the district court permissibly opted to consider Santiago's refusal to recognize the offense of conviction during sentencing. See United States v. McClain, 2 F.3d 205, 207 (7th Cir. 1993). Thus, we cannot find that the district court committed clear error in concluding that Santiago lacked remorse for the commission of the offense. See United States v. Maisonet-González, 785 F.3d 757, 765 (1st Cir. 2015) ("We will not find clear error unless 'on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed.'" (quoting United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002))).

Neither do we agree with Santiago's contention that the fact that he was crying during sentencing necessarily reflected that he felt remorseful. While tears may be an adequate expression of remorse in some circumstances, they are not necessarily so in every

-18-

Santiago also argues that his sentence was substantively unreasonable. As previously stated, Santiago was sentenced to 120 months' imprisonment as to Count One and eighty-four months as to Count Two, to be served consecutively. Although the district court handed out a considerable sentence, it was clearly less than half than the statutory maximum and outlined a plausible rationale that falls "within the expansive universe of reasonable sentences." United States v. King, 741 F.3d 305, 308 (1st Cir. 2014).

Additionally, Santiago's personal characteristics support the imposed variance. United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) ("A sentencing court's reasons for a variance 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" (quoting Martin, 520 F.3d at 91)). The district court noted that Santiago's criminal history was not adequately reflected by the GSR and that he was on probation when he committed the robbery at issue. These considerations militate in favor of a higher sentence. Given Santiago's criminal history, the fact that he was on probation at the time, and that he robbed two

---

circumstance. Santiago may have been crying out of self-pity or because of the impending punishment. As a result, we are unable to conclude that based on this record, Santiago's tears, without more, constituted an adequate expression of remorse.

different banking institutions within weeks of each other, the district court could conclude that the above-guidelines sentence was necessary to promote respect for the law and deter further criminal conduct.

Accordingly, we find that the imposed sentence was procedurally and substantively reasonable.

**V.**

For the foregoing reasons, we affirm the judgment below, without prejudice to Santiago's right to raise his claim of ineffective assistance of counsel in a post-conviction relief proceeding brought pursuant to 28 U.S.C. § 2255.

**Affirmed.**