**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-2126

UNITED STATES OF AMERICA,

Appellee,

v.

RICARDO TORRES-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Hon. Aida M. Delgado-Colón, U.S. District Judge

Before

Torruella, Selya, and Kayatta,
Circuit Judges.

Darla J. Mondou and Mondou Law Office on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Nelson Pérez-Sosa, Assistant United States Attorney, on brief for appellee.

September 21, 2016

**KAYATTA**, <u>Circuit Judge</u>.  In August 2013, Ricardo Torres-Rivera and eighteen others were indicted and charged with violating federal law by participating in a broad conspiracy to import heroin into Puerto Rico.  Torres-Rivera agreed to plead guilty, and the parties recommended a sentence to the district court on the low end of the applicable guidelines range of 87 to 108 months' imprisonment.  The government also certified to the district court that Torres-Rivera met the requirements for safety-valve relief under 18 U.S.C. § 3553(f), and because the district court accepted the government's certification, Torres-Rivera was exempt from the otherwise-applicable statutory 120-month minimum sentence.  The district court nonetheless sentenced Torres-Rivera to 120 months in prison, twelve months more than the top of the guidelines range.

Torres-Rivera now appeals, arguing that the sentence the district court imposed was both procedurally and substantively unreasonable.  It was neither, so we <u>affirm</u>.

## I.   Background

In May 2015, Torres-Rivera agreed to plead guilty to two criminal counts.  The first, count two of the indictment, charged him with violating 21 U.S.C. §§ 952(a) and 963 by conspiring to import drugs into the United States.  The second, count three of the indictment, charged him with violating 18 U.S.C. § 1956 by participating in a conspiracy to launder the proceeds of the criminal enterprise.

- 2 -

In the plea agreement, the parties agreed to recommend a term of imprisonment on the lower end of the applicable guidelines sentencing range, which they determined was 108 to 135 months' imprisonment. The agreement warned Torres-Rivera, however, that count two carried a statutory ten-year (120-month) mandatory minimum sentence. The agreement also stipulated that the district court was neither party to nor bound by the agreement, and that the sentencing decision was ultimately within the district court's discretion.[1]

During the change of plea hearing, the government described the evidence it would present against Torres-Rivera were the case to proceed to trial:

> As to Count 2 as to [Torres-Rivera], . . . to begin with Your Honor this case commenced with a Title 3 that started in Col[o]mbia. So basically the evidence that we have here, among other evidence is wire recordings. In this case all of the three defendants [pleading guilty at the change of plea hearing] were recorded . . . .
>
> The participation of Mr. Torres in this conspiracy was basically he worked for [defendant] number 1, for Mr. Hernando Mar[í]n Echeverri. He was recorded communicating with Mr. Mar[í]n and other codefendants trying to coordinate the smuggling, the importation, transportation and distribution of the heroin into Puerto Rico. There is also evidence that Mr. Torres coordinated also the transfer of

---

[1] The plea agreement additionally included an appellate waiver. The parties agree, however, that the waiver does not bar this appeal because Torres-Rivera's sentence exceeded the parties' jointly stipulated range.

drug proceeds from Puerto Rico into Col[o]mbia.

At sentencing, the district court accepted the government's certification that Torres-Rivera qualified for sentencing relief under 18 U.S.C. § 3553(f). This "safety valve" provision requires a court to disregard an applicable statutory minimum sentence if the court finds at sentencing that the defendant meets five specified criteria, one being that the defendant "was not an organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f)(4). In accepting the government's certification, the district court so found. This resulted in a reduction in Torres-Rivera's final offense level, making his guidelines sentencing range 87 to 108 months.

The district court nevertheless imposed a sentence of 120 months' imprisonment, explaining that although the statutory minimum did not apply, Torres-Rivera's high-level involvement in the conspiracy and his position as the direct link between its participants and its leader justified an upward departure from the guidelines range. Curiously, the district court justified its decision to impose an above-guidelines sentence in part by explaining that it believed Torres-Rivera "could have received a two level enhancement under section 3B1.1." This enhancement, known as the "aggravating role" enhancement, calls for an upward adjustment to a defendant's offense level where the defendant is

an "organizer, leader, manager, or supervisor" of others in the offense. U.S.S.G. § 3B1.1(c). An application note accompanying this enhancement provides:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 cmt. n.2.

Citing this application note, the court found that Torres-Rivera's role in the offense justified an upward departure. The court explained that Torres-Rivera's participation in the conspiracy was "extensive [as] to all five drug trafficking events upon which this case is based," and that he appeared "to have safe kept money to be sent to Col[o]mbia[,] and those monies of course were the illegal proceeds of the narcotics that were being moved." Accordingly, Torres-Rivera was sentenced to 120 months in prison, the "12 extra months from the 108" being "granted as an upward departure for the reasons [the district court] mentioned concerning his managerial role and the significance of the same in terms of the equation and the five drug trafficking events to which the conspiracy is extended."

Torres-Rivera objected to his sentence and made an oral motion for reconsideration, challenging the court's finding that he served in a managerial role in the conspiracy. The district court reiterated that it "didn't assign the adjustment as manager," but rather was "alluding to his responsibility within the entire scheme and the conspiracy." Reconsideration was denied, and this appeal followed.

## II. Discussion

Because Torres-Rivera objected to his sentence in the district court, we review the sentence's reasonableness for abuse of discretion. United States v. King, 741 F.3d 305, 307–08 (1st Cir. 2014) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). Under this standard, we first consider whether the court committed any procedural error "such as failing to consider appropriate sentencing factors, predicating a sentence on clearly erroneous facts, or neglecting to explain the rationale for a variant sentence adequately." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). If no procedural error occurred, we review to ensure that the district court imposed a "substantively reasonable sentence," the "hallmarks" of which "are a plausible sentencing rationale and a defensible result." United States v. Díaz-Bermúdez, 778 F.3d 309, 313 (1st Cir. 2015) (quoting Martin, 520 F.3d at 96).

Torres-Rivera contends that the district court committed procedural error by relying on the application note to § 3B1.1 in handing down an above-guidelines sentence. He argues that the note implies that a court may apply the § 3B1.1 enhancement even where the government concededly lacks evidence to demonstrate the defendant is eligible for it, undermining this court's longstanding rule that to apply the aggravating role enhancement, "[i]t is not enough . . . that the defendant merely controlled, organized, or managed criminal activities; rather, he must instead control, organize, or manage criminal actors." United States v. Flores-de-Jesús, 569 F.3d 8, 34 (1st Cir. 2009) (quoting United States v. Ofray-Campos, 534 F.3d 1, 40 (1st Cir. 2008)). Torres-Rivera thus essentially argues that it is procedural error to increase a defendant's sentence based on his mere management of assets or activities, especially where such increase results in the same sentence the court might have imposed by applying a § 3B1.1 enhancement.

To be sure, had the district court applied the § 3B1.1 enhancement in this case, it would quite clearly have erred. Only moments before finding that Torres-Rivera "could have received a two level enhancement" for being the organizer, leader, manager, or supervisor of the conspiracy, the court accepted the government's certification that he was eligible for safety-valve relief in part due to his being none of these things. And, to the

extent the district court's finding was that Torres-Rivera exercised management responsibilities over the "property, assets, or activities" of the criminal enterprise, this court has repeatedly held that such finding "is not a valid basis for an offense level enhancement under § 3B1.1." United States v. Prange, 771 F.3d 17, 35 (1st Cir. 2014); see, e.g., United States v. Ramos-Paulino, 488 F.3d 459, 464 (1st Cir. 2007) (noting that the application note itself "makes it pellucid that the management of criminal activities (as opposed to the management of criminal actors) may ground an upward departure but not an upward role-in-the-offense adjustment").

But the district court opted for a departure, not an enhancement. Accordingly, the question before us is not whether, applying de novo review, "the sentencing court erred in interpreting or applying the guidelines," but rather whether its factual findings were clearly erroneous or its judgment calls were the result of an abuse of discretion. United States v. Santiago-González, 825 F.3d 41, 48 (1st Cir. 2016). Torres-Rivera insists his sentence is procedurally unreasonable on both of these bases. For the following reasons, we disagree.

First, the record provides ample support for the district court's factual findings as to both Torres-Rivera's role in the conspiracy and the extent of his involvement. Torres-Rivera contends that the district court erroneously found he was

an "employer," a role which has no definition in the guidelines or statute and which the court did not explain.  But the court did not so find; rather, it acknowledged the government's distinction between Marín-Echeverri, the leader of the conspiracy, and Torres-Rivera and Armando Rivera-Ortiz, the two participants whom the government called "employers" due to their roles as non-leaders overseeing the activities of other members of the criminal enterprise.  The court found that Torres-Rivera "acted as a manager on behalf of [Marín-Echeverri, the leader of the conspiracy,] making sure that his instructions were executed."

More importantly, the district court observed that receipts concerning checks used to launder the proceeds of the drug smuggling operation were seized from Torres-Rivera.  The district court also observed that Torres-Rivera managed or controlled the proceeds of the conspiracy by virtue of the nature of his role as the local overseer in charge of safekeeping the money and facilitating its transfer to Colombia.  In response to Torres-Rivera's oral motion for reconsideration, the district court noted that Torres-Rivera "safe kept proceeds" for the leader of the conspiracy, Marín-Echeverri, and "safe kept evidence of the money orders of Western Union of the payments being transferred." Torres-Rivera does not dispute that he exercised this control, and no countervailing evidence in the record suggests that the district court's finding was clearly erroneous.

Torres-Rivera also contends that the district court's finding that he "extensive[ly]" participated in all five of the drug trafficking events at issue was erroneous because "the government stated it had no proof that [he] was involved in all five events." This, too, is a misrepresentation of the record. At sentencing, the government told the district court that it could not say precisely how involved Torres-Rivera was in each of the five individual drug trafficking events, but it had evidence that Torres-Rivera and Marín-Echeverri communicated with one another "on numerous occasions throughout the conspiracy." In other words, the government stated not that it lacked any proof of Torres-Rivera's involvement, but that its proof consisted of circumstantial rather than direct evidence. That circumstantial evidence showed that Torres-Rivera was charged with overseeing criminal activities in Puerto Rico and, contemporaneous with all five drug trafficking events, was in continuous and frequent contact with the conspiracy's leader. In light of this evidence, it was not clearly erroneous to find that Torres-Rivera was significantly involved in all of the trafficking at issue.

Second, it is not an abuse of discretion to depart from the sentencing guidelines range where the record suggests that the defendant managed property, assets, or activities. This court has long recognized the continuing vitality of the application note's directive that an "upward departure may be warranted" where a

person who does not qualify for a § 3B1.1 enhancement "nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." See, e.g., Prange, 771 F.3d at 35 (noting that a court's finding that a defendant "exercised management responsibilities over the property, assets or activities" of the enterprise "may warrant an upward departure" (emphasis omitted)); Ofray-Campos, 534 F.3d at 41 n.11; Ramos-Paulino, 488 F.3d at 464; see also United States v. Cali, 87 F.3d 571, 580 (1st Cir. 1996) ("Section 3B1.1 departures are clearly encouraged by the Commission. The language of Application Note 2 . . . endorses management of assets as a permissible basis for upward departure."). The district court did not procedurally err.

Finally, Torres-Rivera argues that even if the district court committed no procedural error, his sentence is substantively unreasonable. The substantive reasonableness inquiry "focuses on the duration of the sentence in light of the totality of the circumstances." Del Valle-Rodríguez, 761 F.3d at 176. Torres-Rivera contends that the district court committed reversible error because in the end, its impetus for imposing an above-guidelines sentence was the "moral conflict" it felt about giving the same sentence to Torres-Rivera as to lower-level participants in the conspiracy.

This argument fails as well. "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result," United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013) (quoting Martin, 520 F.3d at 92) (alteration in original) (citation omitted), both of which are present here. First, the district court provided ample justification for its decision to impose an upward departure. See Del Valle-Rodríguez, 761 F.3d at 176 ("Where . . . a court imposes a sentence above the GSR, it must justify the upward variance."). It considered the seriousness of the criminal conduct, the defendant's personal characteristics, and the nature, scope, and structure of the conspiracy, and it ultimately based its decision on uncontroverted evidence that Torres-Rivera managed assets and activities of the criminal enterprise. Observing that the guidelines contemplate departures based on such evidence, the district court provided a plausible explanation for the sentence it chose to impose.

That explanation and the resulting sentence are defensible in light of the totality of the circumstances. Torres-Rivera's principal complaint with the sentence he received is that it was based not only on his conduct and personal characteristics, but also on the district court's desire to impose a harsher sentence on him than less involved members of the conspiracy. But "judges are directed by statute to consider 'the need to avoid unwarranted sentencing disparities among defendants with similar

records who have been found guilty of similar conduct.'" <u>United States</u> v. <u>Reyes-Santiago</u>, 804 F.3d 453, 467 (1st Cir. 2015) (quoting 18 U.S.C. § 3553(a)(6)).  Conversely, "district courts have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability -- at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal justice system."  <u>Martin</u>, 520 F.3d at 94.

At sentencing, the district court noted that it sentenced a low-level participant in the conspiracy to 108 months' imprisonment.  The court then explained that it had a "problem with this type of plea agreement where everyone ends up in the same category" because it failed to properly assess each member's role in the criminal enterprise, creating a "moral conflict" in the court's sentencing process.  Justifying its decision to impose a 120-month sentence on Torres-Rivera in this way was not error; indeed, it reflected the court's concern for consistency and fairness in sentencing.

Because Torres-Rivera's sentence was neither procedurally nor substantively unreasonable, we <u>affirm</u>.