# United States Court of Appeals
# For the First Circuit

No. 02-1994

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT RODRIGUEZ, A/K/A DOMINICAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

Melvin Norris, with whom Richard J. Farrell, Jr. was on brief, for appellant.
David Hennessy, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for the United States.

July 21, 2003

**SELYA**, **Circuit Judge**.   The primary question in this appeal is whether the district court abused its discretion in refusing to grant an evidentiary hearing before imposing sentence. The secondary question is whether the district court erred in enhancing the appellant's offense level for an attempted obstruction of justice.   Finding no cognizable error, we affirm.

Defendant-appellant Robert Rodriguez pleaded guilty to distribution of a substance containing cocaine base and conspiracy to commit that offense.   See 21 U.S.C. §§ 841(a), 846. Accordingly, we glean the relevant facts from the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.   See United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991).

The record reveals that the appellant participated in at least eleven drug sales to undercover agents, involving a total of 62.88 grams of crack cocaine.  He was arrested on December 9, 1999, and immediately detained.  Considerable skirmishing ensued (none of which is relevant here).   Suffice it to say that, on April 19, 2002, the appellant changed his plea, and the district court ordered a PSI Report.  When prepared, that report suggested, inter alia, that the appellant was a leader or organizer of the drug-trafficking enterprise.   See USSG §3B1.1(a) (providing for an upward role-in-the-offense adjustment if a defendant "was an

organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive").

In an effort to extricate himself from this looming hole, the appellant procured a letter from a fellow inmate, Junior Santana.[1] That letter, written in Spanish and translated into English by yet another prisoner, read:

> I Junior Santana. Please I would like you people to know that I never meet Robert Rodriguez. What Marisela Segura and Javier Rivera what they are talking about Robert Rodriguez are all lies. Because I know that the situation is like that. Marisela and Javier are both lovers. And always done everything together. I Santana agree to speak the truth and also state the truth.

The appellant submitted these materials along with his objections to the PSI Report. Both the letter and the translation were signed by Santana and notarized by a correctional official. At a status conference, the court, without objection, authorized the government to interview Santana (who by then had been transferred to a penitentiary in Ohio). A government agent did so and reported that Santana had repudiated the letter. According to

---

[1]This was not the appellant's only effort to influence the sentencing process. The PSI Report indicates that he submitted a letter to the government containing a statement that he attributed to a coconspirator (Rivera). That statement was to the effect that he (Rivera) had falsely implicated the appellant. When confronted with the statement, Rivera repudiated it. He said that the appellant had dictated the statement but that he had refused to sign it because the statement "was not true." The probation officer concluded that this incident did not obstruct justice because the government realized all along the bogus nature of the statement.

the ensuing proffer, the appellant had sought out Santana several times, pressured him to write a (false) account that would put the appellant in a favorable light, and obtained the letter as a result. Based on this recantation, the government urged the court not only to dismiss the letter's allegations but also to find that it represented an attempt by the appellant to obstruct justice by suborning perjury. See USSG §3C1.1, cmt. (n.4(b)).

The appellant's attorney then sought to interview Santana. Santana's lawyer refused to allow such an audience. The appellant responded to this refusal by moving for (i) a continuance to investigate the issues raised by the government's proffer, and (ii) an evidentiary hearing. The district court granted the continuance but refused to sanction an evidentiary hearing. In his sentencing memorandum, defense counsel reiterated the request for an evidentiary hearing to test the truthfulness of Santana's statements and the government's conflicting proffer. The court remained resolute, and no evidentiary hearing was ever held.

On August 2, 2002, the district court convened the disposition hearing. The court, inter alia, accepted the government's contention that the submission of the Santana letter constituted an attempt to obstruct justice and ratcheted the appellant's offense level upward by two levels for obstruction of justice. See USSG §3C1.1, cmt. (n.4(b)). The court also (i) prescribed a four-level upward adjustment because of the

appellant's leadership role in a criminal activity involving five or more participants, id. §3B1.1(a); (ii) factored in a two-level reduction for acceptance of responsibility, id. §3E1.1(a); and (iii) held the appellant accountable for 62.88 grams of crack cocaine (not the 500+ grams for which the government sought to hold him responsible). These subsidiary findings yielded a total offense level of 36. Because the appellant was a first offender (Criminal History Category I), the guideline sentencing range was 188-235 months. See id. ch. 5, Pt.A (sentencing table). The court chose the low end of the range and imposed a 188-month incarcerative term. This appeal followed.

The appellant's main argument is that, given the salience of the Santana letter, the sentencing court should have granted his motion for an evidentiary hearing before finding that the letter was both false and submitted for the purpose of distorting the sentencing calculus. In his view, the letter was important to his defense in three key respects. First, by casting doubt upon what two of his cohorts, Rivera and Segura, had told the probation officer, it might have reduced the drug quantity for which he was held accountable. Second, the letter, by attacking the veracity of Rivera and Segura, tended to support his contention that he was not a leader or organizer of the criminal activity. He adds, relatedly, that without this upward role-in-the-offense adjustment, he might have been eligible for a lessened sentence under the so-

called safety valve, 18 U.S.C. § 3553(f). Third — and most important — had the court credited the letter, it would not have elevated his offense level (and, thus, effectively increased his sentence) for obstruction of justice.

This appraisal vastly overstates the potential impact of the Santana letter. From what we can tell, that letter, even if credited, would have had no material effect on the issue of drug quantity — an issue that the sentencing court resolved favorably to the appellant. The same holds true for role in the offense, as the uncontested portions of the facts limned in the PSI Report abundantly justified that adjustment. And that adjustment rendered the appellant ineligible for the safety valve. See 18 U.S.C. § 3553(f)(4); USSG §5C1.2(a)(4). In practical terms, then, the sentencing court's rejection of the Santana letter affected only the enhancement for obstruction of justice. We frame our inquiry accordingly.

It is a familiar rule that a criminal defendant, about to be sentenced, is not entitled to an evidentiary hearing on demand. United States v. Williams, 10 F.3d 910, 915 (1st Cir. 1993); United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. 1987). Faced with a timely request for such a hearing, the court must consider the totality of the circumstances and assess the likely utility of a hearing in that light. See United States v. Bradshaw, 281 F.3d

278, 291 (1st Cir. 2002); United States v. Zannino, 895 F.2d 1, 6 (1st Cir. 1990). Given the dimensions of this approach, it is not surprising that a sentencing court's decision to deny an evidentiary hearing is reviewed only for abuse of discretion. United States v. McAndrews, 12 F.3d 273, 279-80 (1st Cir. 1993).

Although the question is close, we see no abuse of discretion here. The district court examined Santana's letter with care. It noted that the letter was conclusory in nature and determined that it lacked probative value. This determination is buttressed by other aspects of the record; the essence of the Santana letter was contradicted by the appellant's own statements to the probation officer and by various proffers incorporated in the PSI Report. Although the letter intimated that Rivera and Segura had fabricated a tale about the appellant, it gave no plausible reason for them to have done so. Moreover, the appellant had admitted his involvement with these individuals to the probation officer, having confessed that he had supplied them with approximately twenty rocks of cocaine on each of four separate occasions. The court, therefore, had ample reason to discount the allegations contained in the Santana letter.

The principal thrust of the appellant's argument seems to be that the information from the government upon which the district court relied in finding Santana's letter false lacked sufficient indicia of reliability. He contends that the court erred in

accepting the government's proffer, which amounted to the representations of an Assistant United States Attorney (AUSA) purporting to summarize the interview in which Santana allegedly repudiated the letter. We believe that it was within the sentencing court's discretion to rely on the AUSA's representations.

During the sentencing phase of a criminal case, the Federal Rules of Evidence do not apply. United States v. Robinson, 144 F.3d 104, 108 (1st Cir. 1998); United States v. Gonzalez-Vasquez, 34 F.3d 19, 25 (1st Cir. 1994). Similarly, "a defendant's Sixth Amendment right to confront the witness against him does not attach during the sentencing phase." Tardiff, 969 F.2d at 1287. In light of these principles, the sentencing court has broad discretion to accept hearsay evidence at sentencing so long as the court supportably concludes that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy. See id.; United States v. Zuleta-Alvarez, 922 F.2d 33, 36-37 (1st Cir. 1990); see also USSG §6A1.3(a).

This legal framework is controlling here. Even though the government could have done a better job of producing a verbatim record of Santana's interview,[2] the court acted within the realm of

---

[2]In future cases, the government would do well to make a more focused evidentiary showing. For example, it could easily have provided a transcript, a signed statement, an affidavit from the witness, or a declaration from the agent who actually interviewed the witness.

its discretion in accepting the government's version of the substance of that interview.  After all, the AUSA's proffer had all the earmarks of reliability and the record before us contains nothing that remotely suggests the contrary.  We conclude, therefore, that the sentencing court's handling of the Santana letter was acceptable.  Accordingly, the court did not abuse its discretion in denying the appellant's request for an evidentiary hearing.

The appellant's fallback position is that, in all events, the lower court erred in using the letter as a vehicle for an obstruction of justice enhancement.  In imposing an obstruction of justice enhancement, the sentencing court must find that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ."  USSG §3C1.1(A).  The government has the burden of proving, by a preponderance of the evidence, that such an obstruction occurred.  United States v. Aymelek, 926 F.2d 64, 67-68 (1st Cir. 1991).

We review the sentencing court's factbound determination that an obstruction of justice occurred for clear error.  Id. at 68.  In this instance, the court found that the appellant had pressured Santana to sign a false letter and had submitted the

document to the probation officer in an abortive attempt to game the sentencing process. This finding is fully supportable.

We will not belabor the obvious. The AUSA's proffer, though uncorroborated, was thorough and replete with details. In contrast, the Santana letter not only contradicted the appellant's original version of events but also provided little or no supporting detail to back its outlandish claims. The appellant's motive in procuring the letter and submitting it to the court was plainly to influence the contours of his sentence. And in assessing culpability, the sentencing court reasonably could have taken into account the appellant's earlier attempt at a similar subterfuge, see supra note 1, in which he unsuccessfully tried to pressure Rivera into signing a false exculpatory statement.

The fact that the district court could have placed a less sinister interpretation on the submission of the Santana letter is of no consolation to the appellant.[3] "Where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990); accord United States v. Jimenez-Otero, 898 F.2d 813, 814-15 (1st Cir.

_____

[3]For what it may be worth, we note that notwithstanding the obstruction of justice finding the sentencing court granted the appellant a downward adjustment for acceptance of responsibility. See USSG §3E1.1 (explaining that acceptance of responsibility and obstruction of justice adjustments can simultaneously be allowed in rare instances).

1990).  Consequently, there is no principled way that we can disturb the district court's closely reasoned finding that the appellant obstructed justice by inducing Santana to write and sign a letter that he (the appellant) knew was false.  It follows that the district court had no choice but to impose a two-level enhancement.  See United States v. Austin, 948 F.2d 783, 788 (1st Cir. 1991); see also USSG §3C1.1, cmt. (n.4(b)).

We need go no further.  A criminal defendant has no absolute or presumptive right to insist that the sentencing court take testimony on every fact germane to sentencing.  In light of the record as a whole, the district court's explicit findings, and the generous standard of review, we conclude that the court did not abuse its discretion in denying the appellant's request for an evidentiary hearing.  We likewise conclude that the court did not err in enhancing the applicable offense level for obstruction of justice.

**Affirmed**.