# United States Court of Appeals
## For the First Circuit

No. 17-1098

UNITED STATES OF AMERICA,

Appellee,

v.

SANTOS DANIEL RONDÓN-GARCÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Mary June Ciresi, on brief for appellant.
John A. Mathews II, Assistant United States Attorney,
Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Mariana E. Bauzá-Almonte, Assistant United States Attorney,
Chief, Appellate Division, on brief for appellee.

March 23, 2018

**TORRUELLA**, **Circuit Judge**.  In this sentencing appeal, the Defendant-Appellant Santos Daniel Rondón-García ("Rondón") insists that his eighteen-month sentence is both procedurally and substantively unreasonable.  After careful review, we affirm.

## I.  Background

As this appeal concerns the imposition of the defendant's sentence, we briefly summarize the relevant facts and charted course of this case.  We note that, because Rondón pled guilty and does not challenge the factual background, we draw those facts from the change-of-plea colloquy, the unchallenged portions of the Presentence Investigation Report ("PSR"), and the transcript of the sentencing hearing.  See United States v. Fernández-Santos, 856 F.3d 10, 14 n.1 (1st Cir. 2017).

On September 8, 2015, agents from the Puerto Rico Police Department's Bayamón Intelligence Division executed a search warrant at Rondón's residence, where he lived with his common law wife, Alitza Rodríguez-Castrillón ("Rodríguez"), and their three children.  After the agents detained Rondón and Rodríguez in the living room, they searched the residence and seized two notebooks containing drug ledgers, forty-one small plastic zip-lock baggies containing a white powder that field

-2-

tested positive for cocaine, two cellular telephones, one fifteen-round capacity magazine fit for a 9mm Glock pistol containing thirteen rounds of ammunition, and one crack pipe. The police did not find a gun in the residence.

That same day, agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") arrested Rondón. After waiving his Miranda rights, Rondón admitted to selling the cocaine, but stated that he did not remember the pistol magazine being there and that it could belong to a friend. The ATF agents also arrested and interviewed Rodríguez who, after waiving her Miranda rights, stated that she did not know that Rondón had the cocaine and that, about a month prior, she saw Rondón walking in the street with a black firearm. She further told the agents that she did not know if Rondón owned a gun, but she had not seen him with a weapon in the house.

On September 9, 2015, Rondón was charged by Complaint with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). On September 17, he was released on bail into Rodríguez's custody and ordered to comply with conditions of his release. On November 24, 2015, pursuant to a plea agreement, Rondón waived indictment and pled guilty to an Information charging him with one count of possession with intent to distribute less than fifty grams of cocaine, in

-3-

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  His plea agreement with the government included a calculation of his United States Sentencing Guidelines ("Guidelines") sentencing range ("GSR").  The agreement set Rondón's base offense level at twelve, and included a two-level reduction for acceptance of responsibility, resulting in a final adjusted offense level of ten.  While the plea agreement included no stipulation as to Rondón's Criminal History Category ("CHC"), it provided that, should the district court deem Rondón to have a CHC of I, his GSR would be six to twelve months of imprisonment.  The parties agreed that Rondón could request a sentence at the lower end of the applicable range, while the government reserved the right to recommend any sentence within the GSR.  Rondón remained on bail pending sentencing with Rodríguez as his third party custodian.

On November 30, 2016, Rodríguez alerted the U.S. Probation Office, via letter, that she no longer wanted to be Rondón's third party custodian because she had "decided to end the strained relationship with [him]."  The same day, the probation officer filed with the court an informative motion to this same effect.  On December 19, 2016, Rodríguez was shot and killed while driving in Guaynabo, Puerto Rico.  The probation officer filed another informative motion that same day to inform the court of her death.

On December 21, 2016, the U.S. Probation Office filed its PSR with the district court. Like the plea agreement, it determined that Rondón's offense level was twelve pursuant to U.S.S.G. § 2D1.1(c)(14), and recommended a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), making Rondón's total offense level ten. The PSR specified that while Rondón had no prior convictions, giving him a criminal history score of zero, he had been previously arrested on four occasions. The PSR concluded that, based on his total offense level and CHC, Rondón's GSR was six to twelve months of imprisonment. Neither party filed any objections to the PSR.

Rondón was sentenced on December 28, 2016. At sentencing, Rondón's counsel argued for a sentence of six months of imprisonment, at the low end of the GSR, while the Government asked the court to impose a sentence of twelve months. In making his pitch, his defense counsel emphasized that, as a result of Rodríguez's death, Rondón would now be the lone parent to his three children. He also pointed to Rodríguez's statements to probation when interviewed for the PSR that Rondón was dedicated to his children and requesting that the court show leniency. The sentencing court responded that Rodríguez had informed the probation office prior to her death that she no longer wanted to be Rondón's third party custodian "because of

verbal and physical threats and violence displayed by this defendant against her. There is a written letter to that effect in the hands of the Probation Officer, which is consistent with the alleged charges of domestic violence that were [previously] charged." For his part, Rondón's attorney claimed that he was "not privy" to the specific information contained in Rodríguez's letter.

The court then discussed the circumstances of Rodríguez's murder, relayed to it by the probation officer, noting that Rodríguez brought the children to Rondón's mother's house "at his request," and then, after Rondón "asked her specifically to go and pick the children up[,] . . . coincidentally she [was] killed as she was close to the residence. . . . She was murdered on her way to pick up the children." Rondón's attorney responded that the details of Rodríguez's death were "news to [him]," and that he "[didn't] see that information." He did, however, acknowledge that he was aware that Rodríguez had asked to be removed as Rondón's third party custodian, and that the PSR contained information that she was murdered while driving her vehicle in Guaynabo.

Following this exchange, in support of its recommendation, the Government pointed out that Rondón was selling drugs and possessed ammunition in the same apartment in

which he lived with his kids and now-deceased wife. The court then adopted the GSR as calculated in the PSR, but noted that it "ha[d] its qualms" about whether those guidelines "accurately reflect[ed] the components of the offense." After highlighting some of the 18 U.S.C. § 3553 factors, including Rondón's age, dependents, education and employment history, health, and substance use, the court began its dissection of Rondón's arrest history. The court noted that "[t]his is Mr. Rondón's fifth arrest and first conviction," and that he had been previously arrested for violations of controlled substances laws, explosives laws, weapons laws, and domestic violence.[1] The court proceeded to discuss each of the prior charges, summarizing the allegations as written in the PSR, despite the fact that all were dismissed for lack of probable cause or for speedy trial violations.

As the court recited the accusations of Rondón's dismissed 2010 domestic violence charges -- which stemmed from alleged abuse of Rodríguez -- the court drew a parallel between the 2010 allegations and the allegations purportedly contained

---

[1]  In his four previous arrests, Rondón was charged with nine separate offenses. Five of these counts were dismissed after no probable cause was found, and the remaining four were dismissed for violations of Rules 64 or 247 of the Puerto Rico Rules of Criminal Procedure -- which are related to speedy trial violations. See P.R. R. Crim. P. 64, 247.

in Rodríguez's letter requesting to withdraw as Rondón's third party custodian. Specifically, the court stated that the alleged violence resulting in the 2010 charge was the "[s]ame information she conveyed in 2016 shortly before she was killed[, a]t the time that she was requesting to be relieved as third party custody [sic]." At the conclusion of its recitation, the court stated, "[T]his is not strange that the State system will fail to carry over in cases such as this, and this is the reason why this defendant has the fifth known arrest and the first time that he is convicted is here." The court moved on to discuss the nature of the offense in the current case, finding it troubling that Rondón was selling drugs from the residence where he lived with three young children. Finally, the court considered the dangers to the community that drug dealing creates and the violence that is commonly associated with it.

Summing up its considerations, the court then explained:

> [A] departure is warranted and reasons I already stated are on the record. More so pointing as to the sale of drugs and the violent conduct of this defendant and the sale of drugs and keeping drugs in a house and ammunition where there were minors, and what appears to be his violent tendencies.

Ultimately, the court sentenced Rondón to an upwardly variant sentence of eighteen months of imprisonment. In its statement of reasons, the court indicated that it departed from the

-8-

Guidelines because of "Criminal History Inadequacy" and "Aggravating/Mitigating Circumstances." This timely appeal followed.

## II. **Discussion**

"Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). This Court reviews preserved challenges to the reasonableness of sentencing decisions under an abuse of discretion standard. United States v. Santiago-González, 825 F.3d 41, 48 (1st Cir. 2016); see also Gall v. United States, 552 U.S. 38, 46 (2007). Our review is limited to determining whether the district court's sentencing determinations were reasonable. Gall, 552 U.S. at 46. When conducting that review, we first determine whether a sentence is procedurally reasonable and then, if it is procedurally adequate, evaluate its substantive reasonableness. Flores-Machicote, 706 F.3d at 20.

## A. **Procedural Reasonableness of Rondón's Sentence**

We review the district court's method for arriving at a sentence to ensure that the court did not commit any "significant procedural error." Gall, 552 U.S. at 51. Examples of this include "failing to calculate (or improperly

-9-

calculating) the [GSR], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Flores-Machicote, 706 F.3d at 20 (alterations in original) (quoting Gall, 552 U.S. at 51). When a defendant fails to object to the procedural reasonableness of a court's sentencing determinations at sentencing, we review only for plain error. Santiago-González, 825 F.3d at 49 n.10; see also United States v. Cortés-Medina, 819 F.3d 566, 569 (1st Cir. 2016). "Plain error review is not appellant-friendly. It 'entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" Cortés-Medina, 819 F.3d at 569 (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). Both parties agree that plain error is the correct legal framework for this Court to employ here, as Rondón did not object to his sentence on procedural or substantive grounds before the district court. With this standard in mind, we turn to the arguments.

Rondón's primary contention is that his sentence was procedurally flawed because the sentencing court relied on impermissible and prejudicial factors. Specifically, Rondón raises two errors: that the court gave undue weight to its speculation of the circumstances surrounding Rodríguez's murder, and that the court improperly considered his prior arrest record. We will address each in turn, but we begin with the principles.

When fashioning the appropriate sentence, a court must consider numerous factors, including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, to provide deterrence, to protect the public, and to provide the defendant with needed training and care; the kinds of sentences available; the established sentencing range; and the need to avoid disparities in sentencing. 18 U.S.C. § 3553(a)(1)-(4), (6). In so doing, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider." 18 U.S.C. § 3661. During a sentencing hearing, neither the Federal Rules of Evidence nor the Sixth Amendment's confrontation clause applies, United

-11-

States v. Bramley, 847 F.3d 1, 5 (1st Cir. 2017), and thus "the sentencing court has broad discretion to accept hearsay evidence at sentencing so long as the court supportably concludes that the information has sufficient indicia of trustworthiness." United States v. Rodríguez, 336 F.3d 67, 71 (1st Cir. 2003).

Yet, this discretion is not boundless and must comply with due process considerations and the parameters of Federal Rule of Criminal Procedure 32. Bramley, 847 F.3d at 5; see also Betterman v. Montana, 136 S. Ct. 1609, 1617 (2016) ("After conviction, a defendant's due process right . . . is still present. He retains an interest in a sentencing proceeding that is fundamentally fair."). Due process requires that the defendant be sentenced on information that is not false or materially inaccurate. United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991). A sentencing court may consider both charged and uncharged conduct of the defendant, but only if proven by a preponderance of the evidence. United States v. González, 857 F.3d 46, 59 (1st Cir. 2017); see also United States v. Lombard, 72 F.3d 170, 176 (1st Cir. 1995). The defendant must be given adequate notice of those facts prior to sentencing and the court must "timely advise[] [the defendant] . . . that it heard or read, and was taking into account [those facts]." United States v. Acevedo-López, 873 F.3d 330, 341 (1st Cir. 2017) (second

-12-

alteration in original) (quoting United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991)). "[A] defendant must be provided with a meaningful opportunity to comment on the factual information on which his or her sentence is based," Berzon, 941 F.2d at 10, unless that information "fall[s] within the garden variety considerations which should not generally come as a surprise to trial lawyers who have prepared for sentencing." United States v. Pantojas-Cruz, 800 F.3d 54, 61 (1st Cir. 2015) (internal quotation marks).

## 1. Ex Parte Communication

Rondón's first claim relies on the sentencing court's discussion of the circumstances surrounding Rodríguez's murder, which Rondón argues amounts to an insinuation by the court that he was somehow involved and responsible. Citing due process concerns with the court's consideration of supposedly unreliable information, Rondón declares that "[t]he court's tacit innuendo was prejudicial and founded on speculation and improperly before the court." Rondón points to the district court's references to information contained in Rodríguez's letter to probation, and to the fact that Rodríguez was allegedly on her way to pick up the children from his mother's house at Rondón's request when she was murdered close to the residence. This information was relayed to the court by probation, and, according to Rondón, was

-13-

not provided to him in the PSR or in either of the informative motions the probation officer filed.

As a threshold matter, the government argues that Rondón has failed to explain why it was improper for the district court to consider the letter and thereby has waived that argument. We disagree. Before the sentencing court and in his opening brief, Rondón and his counsel repeatedly proffered that only the court and probation were privy to both the letter submitted by Rodríguez and information that the probation officer gave to the court pertaining to Rodríguez's death. When the sentencing court first discussed Rodríguez's November 2016 letter, the following exchange took place:

> [DEFENSE]: I am not privy to that information. Whatever information she gave to the Probation Officer I know about but that information has never been notified to me.
>
> THE COURT: But you heard about that through the motion that was filed.
>
> [DEFENSE]: But it only says an estranged relationship.
>
> THE COURT: The letter alludes that she can no longer act as the third party custody [sic], that the residence belongs to her, that she has it rented and all of the belongings in there belong to her and he has been physically and verbally abusive and violent and she can no longer hold on to the situation.
>
> [DEFENSE]: Well, I have no information to say whether that is true or false.

Further, after the sentencing court relayed information that it learned from the probation officer about Rodríguez's death, counsel responded:

> [DEFENSE]: That is news to me.
>
> THE COURT: She was murdered on her way to pick up the children.
>
> [DEFENSE]: But I don't see that information.
>
> THE COURT: I am giving you the information, but the Presentence Report contains the information that she was killed on December 19 in Guaynabo.
>
> [DEFENSE]: And she notified the Probation Officer that she did not want to continue as third party custody [sic], that I knew.
>
> THE COURT: The new information is the one that the Probation Officer obtained concerning the fact that she had been requested to go in the morning hours to pick up the children and that is when she gets killed.
>
> [DEFENSE]: That I cannot argue, Your Honor.

The very crux of Rondón's argument is that this information was improperly before the sentencing court due to its unreliable nature, and the fact that he had not been informed of it in advance of sentencing. Therefore, while the claim is subject to plain error review for Rondón's failure to object, we do not find the argument waived.

Moreover, the government insists that all of the factual information relevant to sentencing was disclosed to Rondón, and that he had a reasonable opportunity to comment.

-15-

But, while the informative motions and the PSR filed by the probation officer stated that Rodríguez requested to withdraw as Rondón's third party custodian because she "decided to end her strained relationship with Mr. Rondón-García," none of these filings contained information that the third-party-withdrawal request was made due to allegations of physical or verbal abuse. The letter to probation was never itself entered into the record and those facts were not incorporated into the PSR. Cf. Acevedo-López, 873 F.3d at 341 (finding no lack of notice where a summary of the incident at issue was contained in PSR and the challenged portions of the defendant's detention hearing were part of the record). We also note that the PSR contained information that Rodríguez was shot in the head while driving her vehicle on December 19, 2016, in Guaynabo, but contained nothing suggesting Rondón's potential involvement in her murder, a possibility that the sentencing court implied.

A sentencing court using documents outside of the PSR, and that are therefore not subject to Federal Rule of Criminal Procedure 32, "should either make clear that the document is not being used for its factual content, or should disclose to the defendant as much as was relied upon, in a timely manner, so as to afford the defendant a fair opportunity to examine and challenge it." Acevedo-López, 873 F.3d at 342 (quoting Curran,

926 F.2d at 63). While we have recognized the sentencing court's right to consult ex parte with a probation officer to receive advice, "if the probation officer reveals new facts relevant to the sentencing calculus, those facts cannot be relied upon by the sentencing court unless and until they are disclosed to the parties and subjected to whatever adversarial testing may be appropriate." Bramley, 847 F.3d at 7. Providing new factual information in response to a defendant's sentencing argument does not provide the defendant "a fair opportunity to examine and challenge it." Id. at 6 (quoting Curran, 926 F.2d at 63); see also Berzon, 941 F.2d at 10; U.S.S.G. § 6A1.3(a). Here, as noted above, the evidence challenged is absent from the record and was not provided prior to the sentencing hearing. Given the court's discussion of the evidence and its explanation that its departure from the GSR was based, at least in part, on the defendant's "violent conduct" and "violent tendencies," the record suggests that the allegations of abuse were at least a factor in its sentencing calculus. Coupled with defense counsel's repeated rejoinders that he had not been provided notice of the information, we find the failure to provide this factual information to the defendant to be erroneous.

Further, without more, we cannot say this information had a sufficient indicia of reliability to meet the requisite

preponderance of the evidence standard. While hearsay is both an acceptable and often important part of the sentencing process, see Acevedo-López, 873 F.3d at 340; United States v. Hankton, 432 F.3d 779, 780-90 (7th Cir. 2005), and the court may use dependable information even if not subjected to cross-examination, United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010), a defendant must have "notice prior to its use and . . . the opportunity to challenge its reliability." United States v. Cruz, 120 F.3d 1, 2 (1st Cir. 1997). As previously noted, the allegations of physical and verbal abuse contained in the letter were not previously provided to the defendant, nor is there anything in the record corroborating these new allegations. Cf. United States v. Ramírez-Negrón, 751 F.3d 42, 52 (1st Cir. 2014) (hearsay testimony contained adequate indicia of reliability when accompanied by agent's personal observations and knowledge). Nor can we say that Rodríguez's letter was "thorough and replete with details" without the benefit of seeing the letter. Rodríguez, 336 F.3d at 71. As to the fact that Rodríguez and Rondón coordinated a drop-off of their children prior to her death, while the district court stated that it was alerted to the information by the probation officer, the record is unclear as to where the probation officer obtained this information. More importantly, Rondón was only told of

this information at sentencing and was not given a meaningful opportunity to challenge the reliability of this unfavorable information.  See United States v. Zavala-Martí, 715 F.3d 44, 55-56 (1st Cir. 2013).  Use of this information constituted a clear error of law.[2]

Rondón must make it past two additional hurdles of plain error review.  Finding that a claimed error affected a defendant's substantial rights requires a showing that, there is "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." United States v. Perazza-Mercado, 553 F.3d 65, 78 (1st Cir. 2009) (quoting United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007)).[3]  We have before us not a run-of-the mill within-guidelines sentence, but rather an upward variance not requested by the Government.  In its statement of reasons, the court noted that its basis for the departure was the "aggravating

_____

[2] Rondón also raises an insufficiency of the evidence argument, positing that "there was no evidence to assume that [he] was responsible for [the] murder."  However, as we have found the use of this information to be improper on both notice and reliability grounds, we need not address his sufficiency-of-the-evidence argument at this time.

[3]  We have applied the "reasonable probability" test in sentencing "departure" cases, see, e.g., United States v. Wallace, 461 F.3d 15, 44 (1st Cir. 2006), and in cases like this one in which a "variant" sentence was imposed, see, e.g., United States v. Rivera-González, 809 F.3d 706, 712 (1st Cir. 2016).

circumstances of the offense" and its belief that the defendant's criminal history category was underrepresented in prior cases in state court. It is clear from our review of the sentencing transcript, see United States v. Vásquez-Martínez, 812 F.3d 18, 23-24 (1st Cir. 2016) (stating that an appellate court can make reasonable inferences from the district court record), that those aggravating circumstances to which the sentencing court was referring include the fact that Rondón was keeping and selling drugs in a house where minors were present, that Rondón had ammunition in the house and was seen carrying a firearm, and the prevalence of "drug point[s]" within the metropolitan area of Puerto Rico. However, the court also expressly stated that it relied on "all of the[] factors" previously discussed, which included -- at great length -- the improperly admitted information.

But even assuming that the district court would have imposed a more favorable sentence, our discretionary correction of the error in this case is not warranted. See United States v. González-Castillo, 562 F.3d 80, 84 (1st Cir. 2009) (exercising discretion to correct plain error where "fairness of appellant's sentence was impaired"); United States v. Mangone, 105 F.3d 29, 36 (1st Cir. 1997) ("Our final step in the [plain error] analysis is to determine whether we should, in our discretion,

order correction of this plain error that affects substantial rights." (citing United States v. Olano, 507 U.S. 725, 735 (1993))). While the error that occurred at Rondón's sentencing arguably affected the fairness, integrity, or public reputation of the judicial proceeding, see Mangone, 105 F.3d at 36, there are at least two considerations that suggest that we should not intercede. First, although Rondón belatedly acknowledges the applicability of the plain error standard in his reply brief, he makes no argument addressing this fourth prong of that standard, a failure which is itself sufficient to ground our declining to exercise our discretion to correct the error. See, e.g., United States v. Steed, 879 F.3d 440, 452 (1st Cir. 2018). Moreover, with respect to the fourth prong, a simple calculation reveals that Rondón has nearly completed the community corrections center portion of his incarcerative sentence and is about to begin his statutorily-mandated period of supervised release. We believe it most unlikely that the district court on remand would adjust the period of Rondón's transitional incarceration at this late juncture. Cf. Wallace, 461 F.3d at 44 (noting that the district court "might (although by no means must) calculate a [different] sentence upon remand"). Accordingly, while we find that the district court should have provided Rondón notice of its intent to use the ex parte information obtained from

-21-

probation and allowed him an opportunity to rebut it, we choose not to intervene.[4]

## 2. **Rondón's Arrest Record**

Rondón next objects to the court's use of his prior arrests as a basis for its variance from the GSR, claiming that the court clearly assumed the allegations underlying those arrests to be true. As all prior charges against him were dismissed, Rondón claims that the district court lacked any reliable, factual grounds to justify its consideration of those arrests, and that the underlying allegations failed to meet the preponderance of the evidence standard.

Rondón cannot demonstrate that it was plain error for the court to reference his prior arrests. The Guidelines state that "prior similar adult criminal conduct not resulting in a criminal conviction" may form the basis for an upward departure from the guideline range, but that a "prior arrest record itself shall not be considered for purposes of an upward departure

---

[4] We take this opportunity, however, to encourage appellate counsel to inform us of the stakes early during the appellate process in appropriate cases. In a case in which counsel has identified a potentially serious sentencing error affecting a sentence that is likely to be served prior to the completion of the appellate process, a motion to expedite briefing and consideration is not unwelcome. Cf. Burns v. United States, 501 U.S. 129, 154 n.7 (1991) (Souter, J., dissenting) (identifying appellate difficulties for defendants serving modest sentences after erroneous sentencing decisions).

under this policy statement." U.S.S.G. § 4A1.3(a)(2)(E), (a)(3).

Further, this Court has stated that a district court may rely on

the information contained in a PSR at sentencing:

> "Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing." United States v. Taylor, 277 F.3d 721, 724 (5th Cir. 2001). The defendant is free to challenge any assertions in the PSR with countervailing evidence or proffers, in which case the district court is obliged to resolve any genuine and material dispute on the merits. But if the defendant's objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR.

United States v. Olivero, 552 F.3d 34, 40 (1st Cir. 2009)

(quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir.

2003)). Here, the district court invoked Rondón's arrest

history as contained in his PSR, to which Rondón did not object.

Moreover, his PSR contained detailed facts underlying the

individual charges listed in his arrest record. This failure to

object constitutes a waiver of Rondón's right to challenge the

information contained in the PSR. See United States v. Serrano-

Mercado, 784 F.3d 838, 847-48 (1st Cir. 2015); United States v.

Turbides-Leonardo, 468 F.3d 34, 37-38 (1st Cir. 2006); see also

United States v. Ocasio-Cancel, 727 F.3d 85, 91-92 (1st Cir.

2013) (stating that, when the defendant did not object to the

PSR's discussion of dismissed charges against him, "the district

court may treat the fact as true for sentencing purposes.").

-23-

This Court, however, has recently cautioned district courts against using arrests not resulting in convictions to speculate about or infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct initiating these arrests or charges. Cortés-Medina, 819 F.3d at 570 ("Today, we caution district courts against placing weight on such speculation."). See also United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012) ("We have cautioned against district courts relying on mere arrests as indicative of a defendant's character to justify an upward departure from the GSR since a criminal charge alone does not equate with criminal guilt of the charged conduct."). And here, the district court clearly did give Rondón's criminal history weight, methodically discussing the entries of his arrest record, concluding that "this is not strange that the State system will fail to carry over in cases such as this, and this is the reason why this defendant has the fifth known arrest and the first time that he is convicted is here." Further, the district court proclaimed that the defendant's criminal history category, involving no prior convictions, underrepresented his past wrongdoing. "[A] court imposing incarceration for a later crime cannot simply presume that past charges resolved without conviction . . . are attributable to flawed or lax prosecutorial or judicial systems

rather than the defendant's innocence." Cortés-Medina, 819 F.3d at 576-77 (Lipez, J., dissenting).

But, Rondón's argument once again must succumb to the heavy burden of plain error review. In United States v. Delgado-Sánchez, while acknowledging that "when the occasion presents itself, we very well may sustain a preserved challenge to a sentence that treats arrests as proof of unlawful conduct," we found that "[the defendant's] plain-error appellate challenge provides no such occasion." 849 F.3d 1, 13 (1st Cir. 2017). Plain error review requires us to reverse only where a lower court's error is clear or obvious in light of the prevailing law, but "Cortés-Medina held only that the law on this question was unclear." Id. Thus, while we once again express our distaste for a district court's reliance on a defendant's record of prior arrests and charges without convictions, we find that the court's use of the purported criminal conduct underlying Rondón's criminal charges, to which he did not object, did not amount to clear error. Rondón's second claim must suffer the same fate as his first.

We hold that, on plain error review, the procedural errors in Rondón's sentence do not warrant reversal. We move next to Rondón's claim of substantive unreasonableness.

**B.  Substantive Reasonableness of Rondón's Sentence**

Rondón also did not preserve his substantive reasonableness claim below.  Because the standard of review for unpreserved challenges to the substantive reasonableness of a sentence remains unclear, we will give Rondón the benefit of the doubt and review under the more favorable abuse of discretion standard.  See United States v Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir. 2015).

"[S]ubstantive unreasonableness encompasses whether the sentence survives scrutiny when examined under the totality of the circumstances."  Santiago-González, 825 F.3d at 48 (citing United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)).  A sentence is substantively reasonable if it rests on "a plausible sentencing rationale and a defensible result."  United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  "'[S]entencing becomes a judgment call' involving an intricate array of factors."  Flores-Machicote, 706 F.3d at 21 (quoting Martin, 520 F.3d at 92).  We only reverse where the sentence is outside of the "expansive universe of reasonable sentences."  United States v. King, 741 F.3d 305, 308 (1st Cir. 2014).

Rondón claims that the court "gave substantial weight to invalid, unsubstantiated grounds to enhance [his] sentence."

As noted above, see supra Part II(A)(1), some of the grounds upon which the court relied during sentencing were indeed invalid. However, the record shows that the district court also relied on several aggravating circumstances supported by the record in imposing its upward variance. The district court pointed to Puerto Rico's drug distribution problem, see United States v. Zapata-Vázquez, 778 F.3d 21, 23 (1st Cir. 2015) ("[T]he sentencing court may take into account the characteristics of the community in which the crime took place when weighing the offense's seriousness . . ."), the nature of the charged offense, the fact that Rondón kept drugs and ammunition in his home where his three children lived, and the presence of paraphernalia indicating that this was not a single incident. The district court weighed the 18 U.S.C. § 3553 factors, highlighting Rondón's age, education, health, substance use, and possession of a firearm. Setting aside the invalid grounds, we find that an eighteen-month sentence would still have been well within the universe of reasonable sentences for this offense in light of all of the above circumstances. While Rondón may disagree with the weight given to those aggravating factors, "[w]eighing of those factors is left largely within a sentencing court's discretion." United States v. González-Rodríguez, 859 F.3d 134, 140 (1st Cir. 2017).

Finding the sentence reasonable, we hold that the district court did not abuse its discretion.

## III.  <u>Conclusion</u>

For the foregoing reasons, the sentence is affirmed.

**<u>Affirmed</u>**.