# United States Court of Appeals
## For the First Circuit

No. 25-1157

UNITED STATES,

Appellee,

v.

AIZAVIER ROACHE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Aframe, Howard, and Dunlap, Circuit Judges.

Christine DeMaso, Assistant Federal Public Defender, for
appellant.

Donald C. Lockhart, Assistant U.S. Attorney, with whom
Leah B. Foley, United States Attorney, was on brief, for appellee.

March 30, 2026

**DUNLAP**, **Circuit Judge**.  Defendant-Appellant Aizavier Roache ("Roache") appeals from the district court's judgment imposing a sentence of fifty-seven months of imprisonment, followed by three years of supervised release, for conspiring to traffic firearms in violation of 18 U.S.C. § 933(a)(1), (3). Roache argues that the district court erred procedurally by applying a six-point enhancement to his offense level computation under the United States Sentencing Guidelines (the "guidelines" or "U.S.S.G.") based on prior statements of Roache's co-conspirator, Travon Brunson ("Brunson"), to agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Because the district court did not abuse its discretion in its reliability determination, we affirm.

## I.

In January 2021, ATF agents traced a pistol that had been used in a crime in Massachusetts and recovered by Massachusetts state police to Brunson, a South Carolina resident who had purchased the pistol from a gun shop in South Carolina eight months earlier.[1]  A few months later, in June 2021, ATF

---

[1] Because this appeal stems from a sentence following a guilty plea with no plea agreement, we set out the facts as gleaned from the unchallenged portions of the Presentence Investigation Report ("PSR"), the sentencing record, and the sentencing hearing transcript.  See United States v. Guía-Sendeme, 134 F.4th 611, 614 (1st Cir. 2025); United States v. Melendez-Hiraldo, 82 F.4th 48, 51 n.1 (1st Cir. 2023); United States v. Coplin-Benjamin, 79 F.4th 36, 38-39 (1st Cir. 2023).

agents traced another pistol used in a crime in Boston, Massachusetts, and subsequently recovered by Boston police to Brunson, who had bought the pistol from another gun shop in South Carolina about a month earlier.

On August 5, 2021, ATF agents assigned in South Carolina conducted a consensual interview with Brunson "regarding his suspected involvement in firearms trafficking from South Carolina to Massachusetts." Brunson told the agents that he had bought twenty-four firearms for someone he knew as "Boston," and he identified Roache as "Boston" when he was shown Roache's photo. In the interview, Brunson explained how the firearms transactions typically occurred. First, Roache would text Brunson pictures of firearms he wanted. Second, Roache would meet with Brunson and give him cash to purchase the firearms. Third, Brunson would buy the firearms Roache wanted and meet again with Roache at different locations to give him the firearms. Brunson also told the agents that he did not buy firearms for anyone other than Roache, and that Roache was a resident of South Carolina. Brunson stated that he did not know why Roache used him to purchase firearms instead of purchasing them for himself, but he assumed that Roache was a felon.

Later in August, an ATF agent followed up with Brunson in a telephone interview. Brunson told the agent that he had deleted the text messages about firearms deals between him and

Roache. He also claimed that he did not make any money from buying firearms for Roache and that he had stopped buying Roache firearms when he learned that Roache was making a profit. Brunson admitted that, when he would buy firearms for Roache, he would indicate on the required ATF Form 4473 that he, Brunson, was the actual purchaser. The agent ended the interview by telling Brunson that it was a federal crime to buy a firearm for someone else, and that it was illegal for Roache to possess a firearm as he was a felon who had exhibited violence at points in his past.

Over the next twenty-two months, ATF agents traced six more pistols that had been used in crimes and recovered by police in Massachusetts to purchases Brunson had made in South Carolina in 2020 and 2021. Then, starting in July 2023, the ATF began to trace pistols recovered from Massachusetts crimes to purchases made by Brunson in South Carolina in early 2023.

Suspecting that Brunson was involved in straw purchasing and firearms trafficking once again, ATF agents conducted further investigations. The agents reviewed relevant South Carolina gun shop records; pursuant to a search warrant, they searched Roache's phone that had been seized incident to an unrelated arrest in Boston; and pursuant to grand jury subpoenas, they reviewed text messages and Cash App transfers between Roache and Brunson, as well as other bank and travel records for both men.

Not only did the agents discover from these records that Brunson had purchased at least forty-six firearms in South Carolina since May 2020, but they also learned that he had purchased a total of six firearms for Roache on three occasions in early 2023. The first two of these deals involved, first, text messages and phone calls between the men discussing which guns to purchase and prices; second, Cash App money transfers from Roache in Boston to Brunson in South Carolina; and third, Brunson's purchase of pistols. Roache traveled by airplane to South Carolina after the second purchase, retrieved the firearms from Brunson, and returned to Boston via bus. Roache was in South Carolina for the third of these deals. On that occasion, after Roache texted Brunson his PIN, Brunson purchased four firearms using Roache's card. Three of those four firearms were later recovered in Boston from individuals who could not lawfully possess firearms.

Following this investigation, Roache and Brunson were indicted for, and subsequently pled guilty to, conspiring to traffic six firearms from around January 2023 to August 2023 in violation of 18 U.S.C. § 933(a)(1), (3).

The PSR for Roache added a six-level enhancement to his offense level computation based on the six firearms that Roache purchased through Brunson in 2023 and the twenty-four firearms that Brunson -- in his 2021 interviews with the ATF

- 5 -

agents -- stated he had previously purchased for Roache.[2]  The PSR concluded that this six-level enhancement brought Roache's total offense level to twenty-one and, when combined with his criminal history category of IV, recommended a guideline range of fifty-seven to seventy-one months of imprisonment.

Roache objected to the PSR on the basis that Brunson's "uncorroborated statement" was insufficient evidence to support that he was involved in trafficking more than the six charged firearms.  Roache argued that he should have received only a two-level enhancement under the guidelines and thus his total offense level should have been seventeen, resulting in a guideline range of thirty-seven to forty-six months of imprisonment.

At sentencing, Roache again argued that a six-level enhancement based on Brunson's 2021 statement that he had purchased twenty-four firearms for Roache was unsupported because Brunson's statement lacked corroboration.  He also argued that Brunson's statement was unreliable because Brunson committed more crimes after the 2021 interviews and had purchased more firearms than he had admitted in the interviews, and because it was improbable that Brunson only sold firearms to Roache and not to other people.  In

---

[2] Under the guidelines, an offense involving three to seven firearms requires a two-level enhancement, an offense involving eight to twenty-four firearms requires a four-level enhancement, and an offense involving twenty-five to ninety-nine firearms requires a six-level enhancement.  See U.S.S.G. § 2K2.1(b)(1).

response, the government argued that "because the guns were coming up here to Massachusetts to be used," New England ATF agents went to South Carolina to interview Brunson. Further, the government pointed out that it had recovered firearms from South Carolina in Massachusetts and suggested that the ATF agents had a photo of Roache ready to show Brunson because they already suspected he was the recipient of the firearms in Massachusetts.[3]

Noting that it was a "somewhat close" question whether there were sufficient indicia of reliability to support Brunson's 2021 interview statement, the district court nonetheless overruled Roache's objection and applied the six-level enhancement. The court noted that, because Roache's phone history did not go back to 2020, the court would not infer that the government's failure to produce inculpatory evidence of the earlier transactions undermined Brunson's reliability. The court reasoned that Brunson's statement was supported by sufficient indicia of reliability because some of the firearms Brunson purchased in South Carolina were ending up in Boston; Brunson had identified Roache as the actual buyer when shown Roache's picture; and the way Brunson had described the deals occurring in 2021 was similar to

---

[3] During the parties' colloquy with the court, the court noted that the ATF would have had a reason to fly to South Carolina and stated that it presumed the agents "already had a photo of Mr. Roache with them when they showed up to interview Mr. Brunson."

how the deals happened in 2023. In the court's view, these indicators of reliability were sufficient under a preponderance of the evidence standard. The court, however, expressly declined to credit Brunson's statements that he only purchased firearms for Roache and that he did not make any profit from the deals; it also noted that Brunson's criminal activities after the interviews were cause for concern.

Under the enhancement, the court sentenced Roache to the low end of the guideline range: fifty-seven months of imprisonment followed by three years of supervised release. Roache now appeals from the district court's application of the six-level enhancement on the basis that Brunson's 2021 statements supporting the enhancement were not corroborated by adequate indicia of reliability, and that, therefore, the additional gun sales had not been proven by a preponderance of the evidence.

## II.

### A. Standard of Review

We review a federal criminal sentence with "a frank recognition of the substantial discretion vested in a sentencing court." United States v. Rondón-García, 886 F.3d 14, 20 (1st Cir. 2018) (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)). Roache is making a preserved challenge to the procedural reasonableness of his sentence in arguing that the district court improperly calculated his guideline range. See id.

We review such a challenge within the deferential abuse-of-discretion framework. United States v. Acevedo-Osorio, 118 F.4th 117, 134 (1st Cir. 2024); United States v. Vargas-Martinez, 15 F.4th 91, 98 (1st Cir. 2021).

In our review, we are required "not only to 'accept' a district court's 'findings of fact' (unless 'clearly erroneous'), but also to 'give due deference to the district court's application of the guidelines to the facts.'" Buford v. United States, 532 U.S. 59, 63 (2001) (quoting 18 U.S.C. § 3742(e)); United States v. Andino-Morales, 73 F.4th 24, 43 (1st Cir. 2023).[4] "At sentencing, the district court has discretion to consider any evidence with sufficient indicia of reliability, and can rely upon virtually any dependable information." United States v. Carvajal, 85 F.4th 602, 612 (1st Cir. 2023) (internal quotations omitted).

We also "review the district court's reliability determination for abuse of discretion." United States v. Franklin, 51 F.4th 391, 396 (1st Cir. 2022); see United States v.

---

[4] We recognize that our circuit precedent has at times been inconsistent in the framing of this standard. See United States v. Goncalves, 123 F.4th 580, 586 & n.8 (1st Cir. 2024); id. at 589-91 (Howard, J., dissenting). In this case, however, we conclude that the primary question before us is a factual one -- relating to the reliability of the statements made by Roache's co-conspirator -- and that the propriety of the district court's application of the guidelines flows ineluctably from that determination. Accordingly, we need not further refine this standard here.

Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021). "Under that standard, we examine the district court's legal conclusions de novo, its findings of fact for clear error, and its judgment calls with considerable deference." Franklin, 51 F.4th at 396.

**B.  Reliability of Brunson's Out-of-Court Statements**

The gravamen of Roache's argument is that the district court improperly credited unsworn statements by Brunson regarding the duo's prior uncharged gun dealings. A district court has broad discretion to consider information about the defendant and his conduct in reaching an appropriate sentence, United States v. Rosa-Borges, 101 F.4th 66, 76 (1st Cir. 2024), and is not limited by the Federal Rules of Evidence or the Sixth Amendment's confrontation clause when doing so, Rondón-García, 886 F.3d at 21. Further, in sentencing a defendant, a district court "may consider both charged and uncharged conduct of the defendant," though it may do so "only if proven by a preponderance of the evidence." Id. And, to accord due process, "a convicted defendant has the right to be sentenced on the basis of accurate and reliable information." Rosa-Borges, 101 F.4th at 76 (quoting United States v. Ramos-Carreras, 59 F.4th 1, 5 (1st Cir. 2023)). "Thus, imposing a sentence based on factual findings that are, in turn, 'based solely on unreliable evidence' constitutes reversible error." Id. at 76-77 (quoting Castillo-Torres, 8 F.4th at 71).

The question in this case, then, is whether the ATF agents' summary of Brunson's 2021 statements about Roache -- double hearsay concerning conduct for which Roache was never charged -- is reliable because it is supported by sufficient indicia of trustworthiness.[5]  See id. at 77; Rondón-García, 886 F.3d at 21.  This is a fact-intensive determination.  See United States v. Colón-Maldonado, 953 F.3d 1, 11 (1st Cir. 2020); United States v. Oquendo-Rivera, 586 F.3d 63, 67 (1st Cir. 2009).  The district court noted several indicia that convinced it that Brunson's 2021 statements about Roache's firearm purchases were reliable.  These factors included the corroborative evidence of firearms purchased by Brunson in 2020 and 2021 being recovered in Massachusetts by law enforcement; the detailed nature of Brunson's statements, including his identification of Roache as the actual buyer when shown Roache's photo; and the corroborative evidence indicating that Roache was actually purchasing firearms through Brunson in early 2023 in a similar manner to how Brunson described the deals in 2020 and 2021.  We conclude that the district court did not abuse its discretion in finding that Brunson's 2021

_____

[5] While the ATF agent's summary of Brunson's 2021 statement is double hearsay, Roache has not challenged the second leg of the hearsay, namely, the accuracy of the ATF agent's summary of Brunson's statement.

- 11 -

statements were reliable, and thus satisfied the preponderance of the evidence standard.

First, at the time of sentencing, law enforcement in Massachusetts had recovered -- from criminal use or possession -- fifteen firearms that Brunson had purchased in South Carolina. While this fact, by itself, did not conclusively establish that Roache was involved in trafficking the firearms, the district court noted that it was a relevant fact that tended to support that Roache was involved. And if fifteen firearms that Brunson purchased were <u>recovered</u> in Massachusetts by law enforcement, it is not unreasonable to infer that more -- likely many more -- firearms that Brunson purchased were trafficked to Massachusetts. Someone was purchasing the firearms through Brunson and delivering them to Massachusetts in 2020 and 2021; and Roache was not only identified by Brunson in 2021 as his client for the guns, but was definitively linked to six guns purchased in 2023 by Brunson. This supports the conclusion that Roache was buying the firearms through Brunson and delivering them to Massachusetts in 2020 and 2021, as Brunson stated in 2021.

Second, Brunson's 2021 statements were detailed. <u>See</u> <u>Colón-Maldonado</u>, 953 F.3d at 11 (recognizing that the detailed and nonconclusory nature of a witness's account is a sign of reliability). In his first interview with ATF agents, Brunson explained that he knew the person for whom he bought firearms by

- 12 -

the name of "Boston"; that he recognized Roache as "Boston" when shown a photo of Roache; that he had bought twenty-four firearms for Roache; that he and Roache communicated through text messaging; that Roache would text Brunson photos of firearms Roache wanted; that they would meet in person, and that at those meetings Roache would give Brunson cash as payment for the firearms; and that they would meet at different locations to transfer firearms after Brunson had bought them. This level of thoroughness and detail -- which was subsequently corroborated by a similar pattern of activity in 2023 -- further indicates that Brunson's account was trustworthy.

Finally, and relatedly, we are persuaded that the evidence relating to the firearms transactions between Brunson and Roache in early 2023 indicated transactions that were substantially similar to how Brunson described the 2020 and 2021 transactions. See Oquendo-Rivera, 586 F.3d at 67 (noting that consistency and corroboration with objective evidence supports reliability); United States v. Fontanez, 845 F.3d 439, 443 (1st Cir. 2017) ("Objective evidence that corroborates a witness's testimony may provide persuasive proof of that testimony's reliability."). Both sets of transactions involved similar patterns of text messaging between Brunson and Roache about guns to purchase, money transfers, Brunson's purchase of firearms from gun shops, and the physical transfer of firearms from Brunson to

Roache. The uncontested evidence the ATF forwarded supporting the 2023 transactions corroborates Brunson's statements about the earlier transactions.

Roache's reliance on other considerations is unavailing. First, the district court's conclusion is not undermined simply because the court found Brunson's account was not reliable on certain ancillary points. Although the court did not credit Brunson's statements that he only purchased firearms for Roache and that he did not make any profit from the deals, and expressed concern with Brunson's criminal action subsequent to the interviews, it explained that Brunson's other statements were, more likely than not, reliable because of the indicia of trustworthiness discussed above. Accordingly, the district court's reliability determination did not lack a sufficient explanation -- unlike in United States v. Forbes, 181 F.3d 1 (1st Cir. 1999). In that case, we took issue with the district court's failure to explain why it found a witness to be reliable on one issue yet unreliable on another issue, so we remanded for the district court to "clarify and amplify the reasons for its factual findings or, perhaps, reconsider its conclusion." Id. at 7-8. That same concern does not apply here where the district court provided an explanation for why it relied on the core elements of Brunson's statements. And Brunson's account was not "internally inconsistent or implausible on its face." Id. at 7 (quoting

- 14 -

Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)).  He did not contradict himself in recounting his transactions with Roache and it was not implausible that Roache was the actual buyer, as the ATF had Roache's picture as a suspect and -- two years later -- was able to document that Roache actually purchased firearms through Brunson.  The district court therefore did not need to reject Brunson's statement in its entirety.

Roache's other arguments also fail to persuade us. Roache argues that the district court should have drawn a negative inference from the lack of records supporting the transactions Brunson described in his 2021 interviews.[6]  But the court explained that it would not draw the inference that the lack of inculpatory evidence such as text messages from 2020 undermined Brunson's statements about the 2020 and 2021 transactions because the history on Brunson's phone did not go that far back in time.  Even if the government could have presented additional evidence, such as bank and phone records, to corroborate the 2020 and 2021 transactions that Brunson described, it only needed to prove Roache's uncharged conduct by a preponderance.  See Rondón-García, 886 F.3d at 21.

---

[6] Roache complains that Brunson committed obstruction of justice by deleting text messages relating to the earlier gun transactions.  This point was not made below, and, in any event, the record does not show that Brunson deleted the text messages after the initial interview.  We therefore have no basis to conclude that this provides an additional reason to doubt Brunson's statement.

As discussed above, there were sufficient indicia of the trustworthiness of Brunson's statements for the district court to decline to draw a negative inference from the lack of inculpatory bank and phone records in the government's evidence.

Additionally, Roache contends that the district court wrongly inferred that the ATF agents who conducted the first interview with Brunson traveled from Boston to South Carolina. We note that Roache failed to raise this point in the district court, and thus courted waiver, see Shabshelowitz v. R.I. Dep't of Pub. Safety, 155 F.4th 62, 66-67 (1st Cir. 2025); but even if we were to entertain it, the argument does not help Roache. Roache does not contest the fact that, regardless of where they were based, the agents were seeking to interview Brunson because they suspected him of being involved in firearms trafficking from South Carolina to Massachusetts based on the fact that firearms he bought were being recovered from criminals in Massachusetts. As the district court noted, the agents "would have had a reason" for showing up to interview Brunson. The district court reasonably inferred that the agents' knowledge that firearms bought by Brunson were being recovered in Massachusetts corroborated Brunson's detailed statements about how he was buying the firearms for someone nicknamed "Boston."

Finally, the fact that Brunson actually purchased sixteen more firearms than the thirty he has admitted he bought

for Roache does not necessarily undermine the fact that he had purchased at least thirty firearms for Roache; that is, his undercounting does not conflict in a meaningful way with his basic narrative. The fact that Brunson did not disclose the total number of firearms he purchased since 2020 is therefore irrelevant to the reliability of the evidence the district court relied upon. And Brunson's errant statement that Roache lived in South Carolina in 2021 does not necessarily discredit the reliability of Brunson's statements about the firearms transactions because Roache may have returned to visit often or split his time between South Carolina and Massachusetts.

The district court therefore did not abuse its discretion in crediting Brunson's statements regarding the number of firearms he purchased for Roache. Although the court noted that the determination was a "somewhat close" call (an observation with which we agree), that simply indicates that the court carefully rendered its decision after considering both the indicia that supported and the indicia that undermined the reliability of Brunson's statements. That it was a close call is precisely why we cannot say that the district court abused its discretion in crediting Brunson. Further, having concluded that the district court did not abuse its discretion in determining that Brunson's statement was reliable, it follows that the court's application of the guidelines was not error.

## III.

We **affirm** the district court's judgment.